JOHN McNULTA, Receiver,

*v.*

J. R. LOCKRIDGE, Admr.

*Filed at Springfield March 30, 1891.*

1. RECEIVER—*action against—judgment in rem.* A judgment in an action against a receiver of a railroad company, for a liability incurred by his predecessor in office, that the plaintiff "have and recover of and from the said defendant, A B, receiver of the W. Railway Company, the said sum of $6000, as his damages, as aforesaid, to be paid in due course of administration of the trust, together with his costs," etc., awarding no execution, is not a personal judgment against the receiver, but is in the nature of a judgment *in rem* against the matters of the receivership, or the fund and property which are the subjects of the trust.

2. SAME—*torts of servants—respondeat superior.* A receiver of a railroad company, while exercising the franchise of such company and operating its road, is, in his official capacity, subject to the same rules of liability as apply to the company itself when it is operating the road under the same franchise. For torts committed by his servants in operating the road under his management, he is responsible, upon the principle of *respondeat superior.*

3. SAME—*torts of servants—liability of railway company.* A railway company having no control over either the receiver or his servants, is

not, in the absence of statutory provision to that effect, responsible for the negligence or torts of the employes of the receiver in operating the road, and no suit against it for damages occasioned thereby can be maintained.

4. SAME—*character of liability for torts of servants.* The liability of a receiver for the torts of his servants in operating a railroad is not a personal one, but a liability in his official capacity, only, and the damages for such torts are not to be recovered in suits against him personally, and collected on execution against his individual property. The judgment should provide for its payment out of the trust fund or property in his hands or under his control.

5. SAME—*when action against will lie.* So when a liability of a receiver is incurred by the negligence of his servants in operating a railroad under its franchises, and his resignation is accepted by the Federal court of chancery, and a successor is appointed by such court, who qualifies and assumes the charge and control of the property and fund, an action in the State court by the party aggrieved will lie against such successor, in his representative capacity.

6. An action at law in a State court lies against a receiver in possession of the property and effects of a railway corporation, for the torts of the servants of his predecessor in the same receivership.

7. By sections 2 and 3 of the act of Congress of March 3, 1887, it is intended that the suits provided for in the act shall be maintainable in respect to all acts or transactions of receivers in carrying on the business connected with the property in their possession and under their control.

8. It is the evident intent of such act of Congress, that a plaintiff who has a strictly legal right of action and a claim for unliquidated damages enforcible against and payable out of property which is in the possession and under the control of a receiver appointed by a Federal court, shall not be deprived of his action at law, and of the right of trial by jury.

9. REMEDIAL STATUTE—*how construed.* In construing a remedial statute, its language, so far as is consistent with a fair construction of the law, should be so interpreted as to promote and advance the remedy.

10. ADMISSION *by plea.* In an action against a receiver of a railway company for a personal injury, the declaration alleged that at the time when, etc., C. was the receiver of the company by appointment of a certain court named, and as such was in possession of and operating the road, and that the employes operating the trains were the servants of C., as such receiver, and that on, etc., said C. resigned his office, and on the same day the court accepted the resignation and appointed M., the defendant, receiver, as the successor of C., and that M. qualified as such, and entered upon his duties as such successor : *Held,* that the plea of

not guilty admitted not only the representative character of the defendant at the time he was sued, but also the other allegations of the declaration in respect to the appointment of C. as receiver, his resignation, and the appointment of the defendant.

11.　In an action on the case by an administrator, against the receiver of a railway company, to recover damages for causing the death of the intestate by negligence, the plea of the general issue will not put in issue either the character in which the plaintiff sues, or the character or capacity in which the defendant is sued.

12.　Instructions—*the words "at the time," construed.* An instruction submitting to the jury the question whether the deceased, who was ·killed while crossing a railroad on a highway, was, at the time of the ·accident, in the exercise of due care, is not faulty, as limiting the inquiry to the precise moment of collision. The words "at the time," as used, refer to the whole transaction, and it will be held that the jury so understood them, when there is evidence showing the general habit of the deceased as to care in crossing railroad tracks, and the jury specially find that the deceased, on approaching the track and before driving upon it, looked and listened for the approach of an engine or train.

13.　Same—*understood by the jury.* In an action against the receiver of a railway company, to recover damages growing out of the negligence of the servants of the defendant's predecessor, the use of the words, "negligence of the defendant, as charged in the declaration," and the words, "the agents or servants of the defendant in charge of the engine in question," in the plaintiff's instructions, are not strictly accurate; but when it is evident that the word "defendant" referred to the receiver in charge at the time of the injury, and was so understood by the jury and the defendant, the error will not be so serious as to require a reversal.

Writ of Error to the Appellate Court for the Third District;—heard in that court on writ of error to the Circuit Court of Christian county; the Hon. James A. Creighton, Judge, presiding.

On the 15th day of January, 1887, James Molohan, and Mary E. Molohan, his wife, while attempting to cross the track of the Wabash, St. Louis and Pacific Railway Company in a sleigh, at a public crossing in Christian county, were struck by a locomotive engine and tender, and killed. On the 13th day of July following, Lockridge, the defendant in error, as

administrator of their respective estates, brought suits against plaintiff in error, as receiver of the Wabash, St. Louis and Pacific Railway Company, for causing their deaths. The declarations in the two cases were alike, except as to the name of the decedent, and by agreement of parties they were consolidated, and tried as one case. The results of a jury trial were verdict and judgment for defendant in error, and against said receiver, for $6000 damages, and the judgment was afterwards affirmed in the Appellate Court. The writ of error now in question brought the record to this court.

The declarations upon which the causes were tried, each contained three counts, and the negligences alleged in the respective counts of each declaration were, that the statutory signals were not given on approaching the crossing; that trees, shrubbery, etc., were permitted to remain on the right of way upon and about the crossing, which obstructed the view of persons traveling on the highway, and prevented the deceased from seeing the engine and tender in time to avoid them; and that the engine was driven at a high and reckless rate of speed. The declarations each also alleged, "that on the 16th day of December, 1886, in a certain cause in equity then pending in the Circuit Court of the United States for the Southern District of Illinois, wherein the Central Trust Company of New York, and others, were complainants, and the Wabash, St. Louis and Pacific Railway Company, and others, were defendants, one Thomas M. Cooley was, by the order of said court, appointed receiver of the Wabash, St. Louis and Pacific Railway Company, and was then and there duly qualified as such receiver, and from thenceforward, until the 1st day of April, A. D. 1887, had possession of, used and operated said railway," etc. And each declaration concluded as follows: "And the plaintiff further avers, that said Thomas M. Cooley afterwards, to-wit, on the 1st day of April, A. D. 1887, resigned his said office of receiver, as aforesaid, and the said Circuit Court of the United States for the Southern Dis-

trict of Illinois accepted the resignation of said Thomas M. Cooley as such receiver, and afterwards, to-wit, on the 1st day of April, A. D. 1887, the court last aforesaid, by an order entered in the said cause aforesaid, appointed the defendant, John McNulta, receiver of said Wabash, St. Louis and Pacific Railway Company; that said defendant, John McNulta, then and there duly qualified as such receiver, and he thenceforward has been in possession of, using and operating said railway as such receiver," etc. The only pleas interposed by the defendant were pleas of not guilty.

At the close of the evidence introduced by the plaintiff below, (defendant in error here,) the defendant below (plaintiff in error here) moved the court to instruct the jury, that upon the evidence before them the administrator was not entitled to recover; but the court refused to so instruct the jury, and an exception to its ruling in that behalf was duly taken.

Among the instructions given to the jury at the instance of the plaintiff below were these:

"1. The court instructs the jury, that if they believe, from the evidence, that the plaintiff's intestates, while exercising ordinary care to avoid injury, were killed by the negligence of the defendant, as charged in the declarations, they will find for the plaintiff.

"3. The court further instructs you, that if you believe, from the evidence, that the agents or servants of the defendant in charge of the engine in question failed to ring a bell or sound a whistle, continuously, for a distance of eighty rods before reaching the crossing, and that James Molohan and Mary E. Molohan, while attempting to pass over the railroad track at said crossing, were exercising due care and caution for their own safety, and were struck and killed at said crossing by an engine then in charge of such agents or servants, and that such killing was the direct consequence or result of the failure of said agents or servants to so ring a bell or sound a whistle, then the jury should find for the plaintiff.

"4. The court instructs the jury, that evidence of the general habit of James Molohan when crossing railroad crossings may be taken into consideration by the jury, together with all the facts and circumstances in evidence, in determining the degree of care used by the deceased while attempting to cross the defendant's railroad at the time they were killed, and that it is not necessary that the plaintiff should show, by an eye witness, as to said Molohans' care and caution exercised by them at the crossing at the time they were killed, in order for the plaintiff in this case to recover, provided you believe, from the evidence, and all the facts and circumstances in evidence, that they were exercising ordinary care and caution for their own safety at the time they attempted to cross the said railroad track."

The court, at the instance of defendant below, gave to the jury some thirteen instructions, and refused to give several others that were asked, and among those so refused was one which was as follows:

"4. The court instructs the jury, that it is averred in plaintiff's declaration that at the time of the accident in question Thomas M. Cooley was operating the railway as a receiver, and that the defendant was subsequently appointed the successor of said Cooley as such receiver; and the court instructs you, that to entitle the plaintiff to recover, this averment must be proved, and unless the plaintiff has made such proof the jury should find for the defendant, without regard to all other questions in the case."

Mr. George B. Burnett, for the plaintiff in error:

An action at law can not be maintained against one receiver for the tort of his predecessor. The liability growing out of the relation of master and servant must cease when the relation itself ceases to exist. *Quarman* v. *Burnett*, 6 M. & W. 499; *Scammon* v. *Chicago*, 25 Ill. 424; *Nicholson* v. *Maunsey,*

15 East, 384; *Hilliard* v. *Richardson*, 3 Gray, 349; *Painter* v. *Pittsburg*, 46 Pa. St. 213.

The acts of a receiver, or of his servants, are not the acts of the corporation, nor can it control either the receiver or his employes. *Jackson* v. *Lahee*, 114 Ill. 287; *Angil* v. *Smith*, 9 Ves. 335; *Niswall* v. *Sampson*, 14 How. 52; *Railroad Co.* v. *Davis*, 23 Ind. 553.

For an injury occasioned by the act of a receiver the corporation can not be made liable. The receiver, in his official capacity, and the property in his charge, are alone liable in such case. *Railroad Co.* v. *Davis*, 23 Ind. 553; *Heath* v. *Railroad Co.* 83 Mo. 617; *Railroad Co.* v. *Anderson*, 44 Ark. 323; *Bell* v. *Railroad Co.* 53 Ind. 57; *Thurman* v. *Railroad Co.* 56 Ga. 376; *Metz* v. *Railroad Co.* 58 N. Y. 51; *Turner* v. *Railroad Co.* 74 Mo. 602; *Trust Co.* v. *Railroad Co.* 7 Fed. Rep. 539.

It is not true that an action could not be maintained against Cooley after his resignation. High on Receivers, sec. 268.

A receiver is not liable in an action at law upon the contract of his predecessor. *Kerr* v. *Little*, 39 N. J. Eq. 83; *Coal Co.* v. *Railroad Co.* 38 id. 75.

Under the issues, to entitle plaintiff to recover it was necessary for him to prove that Cooley committed the injury as receiver, and that the defendant was appointed his successor.

When the injury alleged is to the relative rights of the plaintiff, the general issue puts in issue also the relation out of which they are claimed to arise, since it involves the exercise of the right. 1 Chitty's Pl. (9th Am. ed.) 478; *Conant* v. *Griffin*, 48 Ill. 414.

The general issue imposes on the plaintiff the burden of proving every material allegation of his declaration, except the character in which he sued and the character in which the defendant was sued. 1 Chitty's Pl. 490; 1 Greenleaf on Evidence, sec. 74.

It is error to give instructions upon a theory that has no evidence to support it. *Bullock* v. *Narrott,* 49 Ill. 62; *Oxley* v. *Storer,* 54 id. 159; *Railroad Co.* v. *Benton,* 69 id. 174; *Prescott* v. *Maxwell,* 48 id. 82; *Provision Co.* v. *Hightower,* 92 id. 139; *Bradley* v. *Parks,* 83 id. 169.

Messrs. PATTON & HAMILTON, and Messrs. RICKS & CREIGHTON, for the defendant in error:

The judgment is not against McNulta, personally. The law is well settled that a receiver is not personally liable for the torts of his servants. Beach on Receivers, secs. 715, 718; *Woodruff* v. *Jewett,* 37 Hun, 265; *Commonwealth* v. *Bank,* 26 Pa. St. 235; *Davis* v. *Duncan,* 19 Fed. Rep. 477; *Trust Co.* v. *Railroad Co.* 7 id. 537; Wait on Insolvent Corp. sec. 242; 2 Rorer on Railroads, 898.

While suits, after their discharge, and after the property has passed beyond the control of the court, can not be maintained against receivers personally, the authorities are uniform that receivers who are operating railroads under the direction of the court may be held answerable, in their official capacity, for injuries sustained, in the same manner that the corporation would have been liable. *Winbourn's case,* 30 Fed. Rep. 167; *Pope's case,* id. 169; Beach on Receivers, secs. 365, 718; High on Receivers, sec. 395; *Meara's Admr.* v. *Holbrook,* 20 Ohio St. 137; *Nichols* v. *Smith,* 115 Mass. 332.

It follows that suits against receivers are really suits against the fund or property of which they are the custodians. *Trust Co.* v. *Railroad Co.* 7 Fed. Rep. 537.

Upon the death, removal or resignation of a receiver, suits against him do not abate, and his successor may be substituted. *Sheldon* v. *Adams,* 27 How. Pr. 179; 41 Barb. 54; *Searcy* v. *Stubbs,* 12 Ga. 437; Beach on Receivers, sec. 692; Wait on Insolvent Corp. secs. 248, 249; *Railway Co.* v. *Beggs,* 85 Ill. 80; *Insurance Co.* v. *Jaynes,* 87 id. 199.

It is also argued that there is no proof in the record that the Wabash railway was in the hands of a receiver at the time of the accident resulting in the death of the intestates of the defendant in error. Our answer to that position is, that no such proof is necessary in this case. The declaration sets forth fully the appointment of Cooley, his resignation, and the selection of McNulta as his successor. There is no plea making that question an issue, and hence it was not required to be proved. It is a fundamental rule in pleading, that a material fact asserted on one side and not denied on the other is admitted. Stephens' Pl. 158; *Dana* v. *Bryant*, 1 Gilm. 104; *Simmons* v. *Jenkins*, 76 Ill. 479; *Forbes* v. *Pausinsky*, 14 Bradw. 17; *Briggs* v. *Dorr*, 17 Johns. 95; *Raymond* v. *Wheeler*, 9 Cow. 295; *Launtz* v. *People*, 113 Ill. 137; *Stearns* v. *Cope*, 109 id. 340.

In an action against an executor or administrator, in order to show that the defendant was not such, he must plead that fact, and he can not avail himself of that defense under the general issue. 1 Chitty's Pl. 489; 1 Tidd's Pr. 644.

Proof that the person in whose name a suit was brought died before the commencement of the suit, can not be received after the general issue is filed to a declaration substituting the name of the executor. It should have been pleaded in abatement. *Mills* v. *Executors*, 76 Ill. 381.

An administrator will not be required to make proof of his representative capacity, unless it is questioned by plea. It is considered as admitted by the defendant. *Ballance* v. *Frisby*, 2 Scam. 63; *Collins* v. *Ayers*, 13 Ill. 358; *Legal News Co.* v. *Browne*, 103 id. 317; *Transit Co.* v. *Shacklet*, 119 id. 232.

A corporation can not deny its existence without pleading it. *McIntire* v. *Preston*, 5 Gilm. 48; *Express Co.* v. *Haggard*, 37 Ill. 465.

We cite these cases to show that where one sues or is sued in a representative capacity, no proof of it is necessary unless the question is raised by plea, and that the general issue does

not put one upon such proof. It does not put in issue the character in which the defendant is sued. 1 Chitty's Pl. 478.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The two principal questions for determination are: First, can an action at law be maintained against a receiver for the tort of the servants of his predecessor in the same receivership; and second, if such action can be maintained, did the general issue put the plaintiff upon proof of the averments of his declarations, that at the time of the injuries complained of Cooley was operating the railway as receiver, and that the defendant was subsequently appointed his successor in the receivership. In addition to these, several questions of minor importance arise upon the rulings of the trial court on the instructions.

*First*—A receiver of a railroad company, who is exercising the franchises of such company and operating its road, is, in his official capacity, amenable to the same rules of liability that are applicable to the company when it is operating the road by virtue of the same franchises. For torts committed by his servants while operating the railroad under his management, he is responsible upon the principle of *respondeat superior*. The liability, however, is not a personal liability, but a liability in his official capacity, only; and the damages for such torts are not to be recovered in suits against him personally, and collected on executions against his individual property, but recovered in suits or proceedings in which he is named or designated as receiver, and to be paid only out of the fund or property which the court appointing him has placed in his possession and under his control. The corporation itself, having no control over either the receiver or his servants, is not, in the absence of an absolute liability imposed upon the company by statute, responsible for the negligence or torts of the employes of the receiver, and no suit against it

for damages occasioned thereby can be maintained. These rules of law are well settled, and have been held in many adjudicated cases, and are laid down in the text books.

In the case at bar, the judgment was not against McNulta personally, but against him in his official capacity of receiver, and no execution was awarded against him, either personally or otherwise. The judgment was, that the plaintiff "have and recover of and from said defendant, John McNulta, receiver of the Wabash, St. Louis and Pacific Railway Company, the said sum of $6000 as his damages aforesaid, to be paid in due course of administration of the trust, together with his costs and charges herein expended."

It seems to us that the expression found in the judgment, "to be paid in due course of administration of the trust," affords the key for the solution of the question whether or not an action at law can be maintained against a receiver for the tort of the servants of his predecessor in office. The judgment, in substance and in fact, is not a judgment against John McNulta, but a judgment against John McNulta, receiver, etc., and to be paid out of the funds and property in his hands as such receiver,—in other words, a judgment against the matter of the receivership, which the court of chancery authoritatively organized in a certain cause in equity pending therein, wherein the Central Trust Company of New York, and others, were complainants, and the Wabash, St. Louis and Pacific Railway Company, and others, were defendants. The judgment is, as it were, in the nature of a judgment *in rem*, and the *res*,—the thing against which it has validity and force,— is the matter of the receivership, the administration in the chancery court of the trust, and the fund and property which are the subjects of the trust. The receiver is sued as such, and merely because he is, for the time being, the tangible representative of the matter of the receivership. Although Cooley may have been at one time receiver, and may have resigned, and McNulta may have been appointed his successor

in office, yet all the while the identity of the *res*,—the matter of the receivership constituted by the court in the chancery suit brought by the Central Trust Company and others,—was preserved. The liability for the torts and negligences charged in the declarations was upon the administration undertaken by the chancery court, and was, through such court, enforceable against the fund and property which were the subjects of the trust being administered, and followed such fund and property into whosesoever's hands they came as receiver.

The torts which are complained of in the declarations were not the personal negligences of Cooley, but the negligences of his servants in his capacity of receiver,—in other words, the negligences of the receiver; and when McNulta succeeded him in the same receivership, they continued to be negligences of the receiver, and negligences for which such receivership was liable, and, by relation, negligences of McNulta, receiver, since he, and he only, was the legal representative of the receivership. The ground of the liability of plaintiff in error, as receiver, grows out of the relation of Cooley, the former receiver, to the railroad which he operated, and the continuation and identity of that relation in plaintiff in error, as his successor in the same receivership.

In *Davis* v. *Duncan*, 19 Fed. Rep. 477, the court said: "The proceedings against a receiver, as receiver, for the wrongs of his employes, is in the nature of a proceeding *in rem*, and renders the property in his hands as such, liable for compensation for such injuries." In *Farmers' Loan and Trust Co.* v. *Central Railroad Co. of Iowa*, 7 Fed. Rep. 539, the court said: "It is therefore obvious that suits against receivers are really and substantially suits against the fund or property of which they are custodians. They represent the property or fund. If judgment be obtained against them, the court orders it to be satisfied out of the fund or property."

The defendant in error alleges negligence on the part of the employes of Cooley, receiver, whereby his intestates were killed,

and he claims that he is lawfully entitled to recover damages therefor. No suit lies against the company whose railroad was being operated by Cooley. (High on Receivers, sec. 396; 2 Rorer on Railroads, 896.) No suit can be maintained against Cooley personally, or as an individual. (High on Receivers, sec. 395; 2 Rorer on Railroads, 298.) Cooley having been discharged from the receivership, no suit can be prosecuted against him, in an official or representative capacity, for torts committed by his employes while he was receiver. 2 Rorer on Railroads, 899; High on Receivers, (2d ed.) sec. 398 b, and authorities there cited.

In *New York and Western Union Telegraph Co.* v. *Jewett,* 115 N. Y. App. 166, the court says: "Obviously, after the receiver has been discharged, and the property, by the action of the court, has all been taken out of his hands, there can be no propriety whatever in any further proceedings against him, because thereafter he ceases to represent any one. He can no longer act for or represent the company or its creditors, or any other person interested in the property; and manifestly the court could not thereafter make an order that he should pay a creditor, he no longer having any funds out of which payment could be made. (*Farmers' Loan and Trust Co.* v. *Central Railroad Co. of Iowa,* 2 McCrary, 181.) It would be a very singular proceeding to permit a creditor to litigate his claim with a person who was formerly a receiver but who has ceased to be such, and who is no longer the officer or agent of the court, or subject to its control."

There being, then, no right of action either against the railroad company, or personally against Cooley, the late receiver, or against Cooley in any representative capacity, is defendant in error without remedy at law for the enforcement of his purely legal rights of action?

Section 2 of the act of Congress of March 3, 1887, provides as follows: "That whenever, in any cause pending in any court of the United States, there shall be a receiver or manager

in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner the owner or possessor thereof would be bound to do if in possession thereof." And section 3 of the act reads thus: "That every receiver or manager of any property, appointed by any court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed; but such suit shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice."

It is unnecessary to state in detail the defects and mischiefs in the administration of the law which this act of Congress was intended to remedy. Suffice it to say, that it is the evident intention of the statute that a plaintiff who has a strictly legal right of action, and a claim for unliquidated damages enforcible against and payable out of property which is in the possession and under the control of a receiver appointed by a Federal court, shall not be deprived of his action at law, and of the right of trial by jury. In construing a remedial statute, its language, so far as is consistent with a fair construction of the law, should be so interpreted as to promote and advance the remedy. It was the legislative intention that the suits provided for in the act should be maintainable in respect to all acts or transactions of receivers in carrying on the business connected with the property in their possession and control. It is improbable that it was the intention that defendant in error should have the benefits conferred by the act provided Cooley continued to be receiver, but should be deprived of such benefits in the event Cooley resigned and was succeeded in the office of receiver by McNulta. It is unreasonable to suppose that it was the intention of Congress that actions at

law should not be maintained for torts committed by the employes of a receiver unless such actions were brought and prosecuted to judgment while such particular receiver remained in office, for in that event the right to prosecute suits at law, and the right to trial by jury, which are the rights which the statute intended to preserve and protect, could at any and all times be cut off and destroyed by the resignation or discharge of the particular receiver during whose administration of the receivership the torts were committed or injuries received. If it is not manifestly in conflict with the language of the act, it should receive such an interpretation as will be commensurate to the mischiefs which were intended to be remedied by it. The word "every," and the clause "may be sued in respect of any act or transaction of his," found in section 3, should not receive the narrow and restricted construction contended for by plaintiff in error. The word "his" refers to the officer who is the receiver or manager of the property which is the subject of the trust organized by the court, and is not to be restricted to some one individual who, at a particular time during the existence of the receivership, filled that office.

Our conclusion then is, that an action at law can be maintained against one receiver for the torts of the servants of his predecessor in the same receivership.

*Second*—It is conceded by plaintiff in error, that when the general issue alone is pleaded it does not put in issue either the character in which the plaintiff sues, or the character or capacity in which the defendant is sued. It is claimed, however, that in the case at bar the general issue admitted that McNulta was receiver at the time he was sued, and that only. We think this is placing too restricted a signification upon the implied concessions made by the pleadings. Suppose that a declaration alleged that A, since deceased, made his last will and testament, by which he appointed B his executor, and that B qualified and acted as such executor; that B after-

wards resigned his office of executor and was discharged, and that C was thereupon appointed administrator *de bonis non, cum testamento annexo,* and duly qualified as such administrator, and became and was the successor in office to B; and further suppose the suit was brought against C, as such administrator, and for the purpose of enforcing a legal liability assumed by or imposed upon B in his capacity of executor, and the declaration alleged, in apt language, the facts above stated, and also the particular cause of action sought to be enforced. In such state of the case, the general issue and no other plea being filed, there would be an implied admission, not only that C was administrator at the time of suit brought, but also implied admissions that B was executor at the time when, etc., and that C was successor in office to B, as averred in the declaration.

Again, suppose suit was brought against the Illinois Central Railroad Company, and the declaration averred that at the time when, etc., said company was operating the Illinois Central railroad from Chicago to Cairo, at, etc., on, etc., aforesaid, the plaintiff was a passenger on said railroad, and that by means of certain specified negligences on the part of the servants of the railroad company operating the train upon which he was a passenger, he, the plaintiff, received certain personal injuries. The plea of not guilty, and that only, being interposed, it could not properly be claimed that the suit of the plaintiff must fail, and for the reason that he did not introduce at the trial a witness who could testify, from his personal knowledge, that at the time when, etc., the corporation sued was operating the railroad, and that the conductor, engineer, fireman, and others operating the train, had been employed by the company sued, and were in fact its servants, and not the servants of some receiver or other person or corporation. In the case last stated it would be impliedly conceded by the pleadings, not only that the Illinois Central Railroad Company was a corporation, but also that at the

time of the alleged injury it was operating the particular line of railroad mentioned in the declaration, and that the operatives in charge of the train being run on said road were its servants and employes.

The two supposed cases above stated, taken together, present, in substance, the case that appears in the record now before us. The admission upon the pleadings is of the character and capacity in which the defendant is sued. That character and capacity includes not only the bare fact that at the time that suit was instituted plaintiff in error was receiver, but the further facts alleged in the declarations, that at the time when, etc., Cooley was receiver of the Wabash, St. Louis and Pacific Railway Company by appointment of court made in the cause in equity designated in the declarations, and was in possession of and operating the line of railway mentioned therein, as such receiver, and that the employes operating the trains on said road were the servants of said Cooley, as such receiver, and that on April 1, 1887, said Cooley resigned his office of receiver, and the court accepted such resignation, and on the same day, and in the same cause, appointed McNulta as such receiver, and as successor in office to Cooley, and that he, McNulta, then and there qualified, and entered upon his duties as such receiver. In line with what we have thus stated on this point is the case of *McNulta* v. *Ensch*, 134 Ill. 46.

The views we have expressed sufficiently indicate our opinion that the trial court committed no error in refusing to instruct the jury as requested by plaintiff in error.

*Third*—It is objected that the first and third instructions given at the instance of defendant in error virtually told the jury that there was evidence before them from which they might find the injuries were inflicted by McNulta, receiver, whereas there was no evidence whatever that McNulta or his servants inflicted the injuries. The expressions in said instructions, "were killed by the negligence of the defendant, as charged in the declaration," and, "the agents or servants of

the defendant in charge of the engine in question," are not strictly accurate. We have no doubt but that the court understood that the "defendant" referred to in said instructions was the receiver in possession of and operating the road when the intestates were killed, and whose successor in office McNulta was. The jury manifestly so understood them, for otherwise they could not, under the instructions of the court, have returned a verdict for defendant in error. It is also perfectly plain that the plaintiff in error and his attorneys so understood and used the expression "the defendant," for in the first instruction given at his and their instance is found the phrase, "no other acts of negligence on the part of the defendant;" in his and their fourth instruction occur the words, "that the defendant was guilty of negligence," and the further words, "that the defendant was guilty of the negligence complained of;" and in his and their twelfth instruction the expression, "that the defendant is guilty of each and all of the acts of negligence charged in the plaintiff's declaration." It would be subversive of justice, even if the instructions are not literally accurate, to reverse a judgment for an inaccuracy which, the record demonstrates, neither misled the jury, nor misled or injuriously affected any one else.

*Fourth*—It is urged that instruction No. 4, for defendant in error, was erroneous. The claim is, that it limited the inquiry of the jury as to the exercise of ordinary care by the deceased to the moment of time when they were killed, and to the immediate time they were in the act of crossing the railroad track. The general habit of James Molohan of looking and listening, and of care and caution when approaching or attempting to cross railroad tracks, was in evidence. The instruction called the attention of the jury to this "general habit" of Molohan, and in connection therewith used the expressions, "at the time they were killed," and "at the time they attempted to cross the railroad track." The jury could not reasonably have understood the instruction otherwise than as referring

to the occasion on which the intestates attempted to cross the track and were killed. As was said by this court in *Lake Shore and Michigan Southern Ry. Co.* v. *Johnsen*, 135 Ill. 641: "The words 'at the time,' as used in the instruction, refer to the whole transaction."

In *Chicago, Milwaukee and St. Paul Ry. Co.* v. *Halsey*, 133 Ill. 248, cited by plaintiff in error, the instruction involved was quite different from that here in question, and was based upon a wholly different state of facts, and the objection to it was, that by it certain facts and circumstances in evidence, and bearing upon the matter of the conduct of the deceased as he approached the crossing, were ignored, and the attention of the jury restricted to the fact and the effect of the absence of direct evidence of what said deceased did at the immediate time of the injury. Here there was no such restriction, but reference was made to a habit, which necessarily called the attention of the jury to the conduct of the intestates preceding the immediate time of the injury. The matter of the care required in approaching the crossing was very fully covered and explained by very numerous instructions given at the instance of plaintiff in error. Besides this, it appears from the special findings of fact made by the jury, that they affirmatively found, from the evidence, that the deceased, as they approached the track and before driving upon it, looked and listened for the approach of an engine or train. This renders it absolutely certain that the jury were not misled by the instruction.

We find no error in the record for which the judgment should be reversed. The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*