## UNITED STATES, to Use of COLONIAL BRICK CORPORATION, v. FEDERAL SURETY CO. et al.

No. 3612.

Circuit Court of Appeals, Fourth Circuit.

Oct. 2, 1934.

See, also (C. C. A.) 72 F.(2d) 964; (D. C.) 5 F. Supp. 247.

Leonard J. Ganse, of Washington, D. C. (Sykes, Nyburg, Goldman & Walter, of Baltimore, Md., on the brief), for appellant.

Roszel C. Thomsen, of Baltimore, Md. (Edmond M. Cook, of Davenport, Iowa, and Walter L. Clark, of Baltimore, Md., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The appeal in this case was taken from an order of the District Court granting a motion of E. W. Clark, receiver of Federal Surety Company, to quash the writ of summons issued against the corporation and to vacate and set aside the return of the writ, on the ground that the corporation had been dissolved and its existence had been completely terminated under the laws of the state of Iowa wherein it had been incorporated. The contention is that the right to sue the corporation persisted, notwithstanding its dissolution, because the action was brought against it under the Hurd Act, 40 USCA § 270, by one who supplied labor and material for use under a contract for the construction of certain public works for the United States.

The case was heard in the District Court upon the allegations of the declaration which was filed in the name of the United States, to the use of the Colonial Brick Corporation

and other intervening creditors of the Federal Surety Company, against the Surety Company and its receiver; and upon exhibits filed with the motion to quash, consisting of certified records of the district court of the state of Iowa in and for Scott county in a suit brought by the state of Iowa through its Attorney General against the Federal Surety Company to secure its dissolution. The following facts appear:

On September 11, 1930, the National Contracting Company entered into a written contract with the United States to furnish the labor and material required for the construction of officers' quarters at Fort George G. Meade, Md., and on September 24, 1930, gave a bond as principal with the Federal Surety Company, as surety, in the sum of $94,937, the condition of which was that the principal should perform all the terms of the contract, and promptly make payment to all persons supplying labor and materials in the prosecution of the work. After the contract was signed, the Colonial Brick Corporation furnished labor and materials to the contractor in the amount of $6,159.36, but was paid on account thereof only $3,218.40, leaving a balance due on December 31, 1930, of $2,940.96, whereupon the Brick Corporation refused to supply and deliver further material or labor. On January 29, 1931, the Surety Company agreed that if the Brick Corporation would continue shipment, the Surety Company would pay the balance of $2,940.96, and also make payment for all future supplies. The unpaid bills were actually paid on February 9, 1931, and additional material and labor was furnished by the Brick Corporation to the amount of $6,803.04, but no part of this sum was ever paid. The contractor was declared in default by the United States on August 31, 1931, and the surety company was called upon to fulfil its obligation under the bond and complete the work; but it failed to do so, and on September 17, 1931, was likewise formally declared to be in default. The work was finished by another contractor and final settlement was had on February 4, 1932. The pending suit for the sum of $6,803.04 was brought on October 12, 1932, after the expiration of the six months' period during which the right of action was reserved to the United States, and before the expiration of the one-year limitation prescribed by the statute.

Prior to the completion of the work, the state of Iowa had commenced the proceeding for the dissolution of the Surety Company and the appointment of a receiver; and on September 25, 1931, the state court passed a decree wherein it was found that the Surety Company had been organized under the laws of the state, and that it was insolvent; and it was adjudged that it be dissolved and its effects distributed, and that E. W. Clark, commissioner of insurance of the state, be appointed permanent receiver of the company, with authority and direction to take charge of its property and wind up the business. All creditors of the Surety Company were ordered to file proof of their claims on or before April 1, 1932, or be debarred from participation in the distribution of assets. The proceeding was taken under the authority of sections 8402, 8964, 8613-c1, and 10761 of the Code of Iowa of 1931.

On December 22, 1932, the state court passed another order wherein it adjudged that the Surety Company had ceased to exist on September 25, 1931, and that all debts to or from it became extinguished, and any judgment rendered against it thereafter was a nullity, and that the receiver held title to all of the property owned by the Surety Company at the time it ceased to exist; and it was ordered that the receiver refrain from entering a general appearance for the Surety Company in any action against it, but be given leave to appear specially for the purpose of presenting a plea in abatement or motion to quash; and that any person asserting a claim against the surety company should share in the assets to the extent that his claim should be allowed by the court.

The effect of the Iowa statutes, as applied to the dissolution of the Federal Surety Company, was considered by the Supreme Court of the United States in Clark v. Williard et al., 292 U. S. 112, 54 S. Ct. 615, 78 L. Ed. 1160, decided April 2, 1934, where the question was whether full faith and credit had been given by the courts of Montana to the statutes and judicial proceedings of Iowa in determining the rights of creditors who, long before the dissolution of the Surety Company, had brought suit against it in a Montana court to recover damages due upon a bond, and after the dissolution, had gotten judgment against it by default. The Supreme Court of Montana, in Williard v. Federal Surety Co., 91 Mont. 465, 8 P.(2d) 633, held that the dissolution of the Surety Company did not abate the suit; and subsequently in Mieyr v. Federal Surety Company, 94 Mont. 508, 23 P.(2d) 959, wherein the Iowa receiver intervened, that the judgment was lawfully rendered although the Surety Company was dissolved, and that an execution

thereon against assets discovered in Montana was good as against the receiver appointed by the Iowa court. The decision was based on the ground that the intervener was not a statutory receiver, clothed with the title derived from the statutes of the domicile, but merely a chancery receiver created by the Iowa decree. The Supreme Court of the United States refrained from passing upon the rights of the judgment creditors under the Montana law, but concluding that the Montana court had misconstrued the effect of the Iowa statutes, sent the case back for further consideration. The court said (page 618 of 54 S. Ct.): "In our judgment, the statutes of Iowa have made the official liquidator the successor to the corporation, and not a mere receiver. State ex rel. Atty. Gen. v. Fidelity Loan & T. Co., 113 Iowa, 439, 85 N. W. 638. His title is not the consequence of a decree of a court whereby a corporation still in being has made a compulsory assignment of its assets with a view to liquidation. Sterrett v. Second Nat. Bank, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135; Lion Bonding & Surety Co. v. Karatz, 262 U. S. 77, 88, 43 S. Ct. 480, 67 L. Ed. 871, 880; Great Western Min. & Mfg. Co. v. Harris, 198 U. S. 561, 575, 25 S. Ct. 770, 49 L. Ed. 1163, 1168; Booth v. Clark, 17 How. 322, 15 L. Ed. 164. His title is the consequence of a succession established for the corporation by the law of its creation. Relfe v. Rundle (Life Assn. of America v. Rundle), 103 U. S. 222, 26 L. Ed. 337; Keatley v. Furey, 226 U. S. 399, 33 S. Ct. 121, 57 L. Ed. 273; Sterrett v. Second Nat. Bank, supra, page 77 of 248 U. S., 39 S. Ct. 27; cf. Bockover v. Life Ass'n, 77 Va. 85; Converse v. Hamilton, 224 U. S. 243, 257, 32 S. Ct. 415, 56 L. Ed. 749, 754, Ann. Cas. 1913D, 1292; Bernheimer v. Converse, 206 U. S. 516, 534, 27 S. Ct. 755, 51 L. Ed. 1153, 1176. So the lawmakers have plainly said. So the Iowa court adjudged in decreeing dissolution."

◼ It is said, however, that the decrees of the Iowa court are unavailing, insofar as they attempt to control or forbid the bringing of the case at bar, for the reason that no state action may restrain the exercise of the sovereign power of the United States under the Hurd Act (40 USCA § 270) on behalf of persons supplying labor or material to government contractors. The act provides that if no suit is brought by the United States in six months from the completion and final settlement of the contract (in this case February 4, 1932), any person supplying labor or material, who has not been paid in full, may bring suit against the contractor and the surety in the name of the United States in the District Court of the United States in the District in which the contract was to be performed and not elsewhere. It is contended that the Iowa court was without power to decree that all claims against the surety must be filed with it on or before April 1, 1932, and that any judgment rendered against the corporation after the dissolution was a nullity. If the court below had held that the present suit cannot be maintained in view of the Iowa decree, the decision could not be upheld; but it does not have that purpose or effect. The motion granted related only to the dismissal of the action against the corporation. Another motion directed to the dismissal of the action as to the receiver was denied, and the appellee concedes the latter ruling to be correct. The case therefore may proceed against the receiver, and the claims of the use-plaintiff and other creditors that may intervene may be established by judgment so as to share in the distribution of the assets in the hands of the statutory liquidator appointed by the Iowa court. The limitation imposed by the decree of that court that the claims of creditors must be filed by April 1, 1932, or be debarred, cannot be construed as applicable to the claims in suit, and there is no reason to suppose that the Iowa court will take any action in this respect at variance with the established law on the subject.

◼ The proper procedure to be followed in a case of this sort was indicated by the decision of Judge Connor in United States v. Illinois Surety Company (D. C.) 238 F. 840, which was affirmed without opinion in Hopkins, Receiver, v. U. S., 246 U. S. 655, 38 S. Ct. 423, 62 L. Ed. 924. Suit was filed under the Hurd Act (40 USCA § 270) against the public contractor and the Illinois Surety Company, the surety on the contractor's bond, in a federal court in North Carolina, a short time after Hopkins had been appointed receiver of the Surety Company by the superior court of Cook county, Ill. He was later joined as party defendant in the suit under the Hurd Act, and demurred to the complaint therein on the ground that the United States District Court had no jurisdiction over him as receiver, or of the cause of action in relation to him, because the complaint did not show that the consent of the Illinois court had been first obtained for the institution of the federal action, or that no relief to the plaintiff could be obtained in the state court of Illinois. It was held that the Hurd Act displaced, pro tanto, where the surety is in

the hands of a receiver, the general rule that a receiver cannot be sued on a cause of action against a corporation without the consent of the court appointing him, and that the action therefore might proceed to any judgment that might be obtained. The court said (page 846 of 238 F.): "Of course, such judgment as may be recorded in this action must be enforced against the property of the Illinois Surety Company, in the custody of the state court by its receiver, by intervention in that court; no mesne nor final process can issue against such property from this court. In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689. The only effect of a judgment here will be to ascertain the liability and fix its amount, leaving the plaintiffs to enforce it, by an appeal to the court having the custody of the property and administering it in the interest of all persons having claims against it, according to their rights and priorities."

No point was raised in that case as to the propriety of continuing the action not only against the receiver but also against the corporation, and it does not appear whether the Surety Company had been dissolved under the laws of Illinois. In the pending case the formal dissolution of the Surety Company abundantly appears, and it is not perceived that the use-plaintiffs will be deprived of any right by the dismissal of the suit against the Surety Company so long as their rights against the statutory liquidator of its assets are preserved. The general rule is that when a foreign corporation has been dissolved, no suit can be filed against it and no personal judgment against it can be obtained in the absence of a statute or of a public policy to the contrary in the state where the foreign corporation has been licensed to do business. Clark v. Williard, supra; National Surety Co. v. Cobb (C. C. A.) 66 F.(2d) 323; Oklahoma Natural Gas Co. v. State of Oklahoma, 273 U. S. 257, 47 S. Ct. 391, 71 L. Ed. 634. There is no such statute or public policy in the state of Maryland.

It would therefore be futile to proceed with the case as to the Surety Company since any judgment against it would be of no effect. It may be that situations will arise in cases under the Hurd Act (40 USCA § 270) which involve assets belonging to a foreign corporation in the jurisdiction in which the suit is brought, that can be reached only by a judgment against the corporation itself owing to rules of local law relative to suits against insolvent corporations dissolved in another state. There is, however, in the pending case nothing to indicate that such a situation here exists, or that the use-plaintiffs could secure any relief in a suit against the dissolved corporation which will not be open to them in the further prosecution of the pending case against the statutory liquidator.

Affirmed.