### NATIONAL LABOR RELATIONS BOARD v. BACHELDER.
#### No. 7514.

Circuit Court of Appeals, Seventh Circuit.
March 13, 1941.

Rehearing Denied April 14, 1941.

Robert B. Watts, Gen. Counsel, NLRB, of Washington, D. C., for petitioner.

Harold K. Bachelder, of Indianapolis, Ind., for respondent.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

This case is before us upon the petition of the National Labor Relations Board for a decree of enforcement of the Board's order, based upon findings of fact and issued against the respondent employer under the authority of § 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C. A., § 151 et seq., requiring respondent (1) to cease and desist (a) from refusing to bargain collectively with United Veneer & Lumber Workers Local Industrial Union No. 607 (hereafter referred to as "United"); (b) from discouraging membership in United; (c) from interfering with, restraining or coercing its employees in the exercise of their rights to self-organization guaranteed them by § 7 of the Act. The order further required the employer (2) to take affirmative action (a) upon request, bargain collectively with United as representative of the employees; (b) offer to certain employees full reinstatement to their former or substantially equivalent positions without prejudice to their seniority and (c-d-e) make whole certain employees for any loss of pay they may have suffered.

The proceeding before the Board was originally instituted by United against the Hoosier Veneer Company and Frank Woolling, who had been appointed receiver of Hoosier by the Circuit Court of Marion County, Indiana, prior to the enactment of the Labor Relations Act. After hearing and before the Board had rendered its decision Woolling died, and W. C. Bachelder, having been appointed receiver in lieu of Woolling, deceased, was substituted as respondent.

The contested issues are (1) did the Board have jurisdiction of the respondent, (2) are the findings supported by substantial evidence and (3) is the order valid and proper.

Respondent, as successor receiver for Hoosier Veneer Company, an Indiana corporation, is engaged at Indianapolis, Indiana, in the manufacture, sale and distribution of veneer and related products. January 17, 1933 the business of Hoosier was placed in charge of Woolling by the Circuit Court of Marion County, Indiana, who from that date until his death on January 15, 1939 continued in full charge of it. During his administration Woolling retained H. E. Daugherty, former president of Hoosier, as general-manager and James C. Daugherty, former secretary-treasurer,

as sales manager and to them he delegated responsibilities for production, sales and personnel, including the hiring and discharging of employees. January 17, 1939 Bachelder succeeded Woolling as receiver.

*First.* It is contended that the Labor Relations Act is not applicable to respondent. In support of this contention counsel asserts (a) the evidence fails to show any unfair practice affecting commerce, (b) the Board failed to obtain the consent of the court appointing the receiver, (c) the Act does not apply to a receivership, and (d) no complaint was filed which charged that respondent had violated the Act.

■ The facts, as found by the Board, are that Woolling, in the course of operations during 1937, imported 73 carloads of logs which were shipped to respondent's plant from points outside the state of Indiana, including one carload from British Columbia and five from West Africa and that from 1933 to 1937 the major portion of the products sold by the receiver, ranging in value from approximately one-quarter million to over one-half million dollars per year, was shipped to out-of-state points and salesmen were maintained in nine principal furniture manufacturing areas in the United States. The Board concluded that the unfair labor practices had led and intended to lead to labor disputes burdening and obstructing commerce and the free flow of commerce. We need say no more than that there was evidence justifying the finding and that support for the conclusion may be found in National Labor Relations, Board v. Fainblatt, 306 U.S. 601, 604, 59 S.Ct. 668, 83 L.Ed. 1014 and cases cited therein. See also National Labor Relations Board v. Bradford Dyeing Ass'n, 310 U.S. 318, 60 S.Ct. 918, 84 L.Ed. 1226.

■ We are of the opinion that there is no merit to the claim that before filing the complaint it was necessary to obtain the consent of the court appointing the receiver. The Labor Relations Act entrusted the exclusive power to prevent unfair labor practices with the Board and designated the Circuit Court of Appeals of the United States as the forum to which petitions for the enforcement or review of Board orders shall be addressed, § 10(a), (e) and (f), 29 U.S.C.A. § 160(a, e, f). See also Amalgamated Workers v. Consolidated Edison Co., 309 U.S. 261, 266-269, 60 S.Ct. 561, 84 L.Ed. 738. The exercise of that jurisdiction does not depend upon the prior

leave of a state receivership court. McNulta v. Lockridge, 137 Ill. 270, 27 N.E. 452, 31 Am.St.Rep. 362, Id., 141 U.S. 327, 12 S.Ct. 11, 35 L.Ed. 796; United States v. Illinois Surety Co., D.C., 238 F. 840; Hopkins v. United States, 246 U.S. 655, 38 S. Ct. 423, 62 L.Ed. 924; United States v. Federal Surety Co., 4 Cir., 72 F.2d 961.

■ Equally unsound is the contention that the Act does not apply to a receivership. § 10(a) of the Act empowers the Board to prevent any person from engaging in any unfair labor practice (listed in Section 8) affecting commerce, and § 2(1) defines the term "person" as including "one or more individuals, partnerships * * * or receivers." A somewhat similar contention was made in National Labor Relations Board v. Colten, 6 Cir., 105 F.2d 179.

■ As to the point that no complaint was filed which charged that respondent had violated the Act, it will suffice to say that on May 3, 1939 a supplemental complaint was filed substituting Bachelder in place of Woolling as the respondent.

*Second.* The respondent contends that the findings are not supported by substantial evidence. The Board found that Woolling has interfered with, restrained and coerced his employees in the exercise of their rights in violation of § 8(1). It also found that he refused to bargain collectively with United as the exclusive representative of his employees, and thereby violated § 8(5) of the Act and that he violated § 8(3) of the Act by discriminating against 14 of his employees in regard to hire and tenure of employment.

United commenced organization activities at the plant among respondent-receiver's employees in July 1937 and continued through September 1937, at which time three-fourths of the employees had signed membership applications. The Board found that a majority of Woolling's employees in the appropriate unit had designated United as their collective bargaining agent. September 30, 1937 United organizer Whitman notified Woolling of United's majority status and submitted to him a proposed collective agreement. Woolling refused to discuss the proposals, asserting that he had no specific authorization from the court appointing him. October 6 Whitman met with Woolling and his attorney, H. K. Bachelder, and requested that the proposed contract be considered and a tentative agreement formulated for presentation to

the Marion Circuit Court. Thereafter Woolling applied to the court for instructions. The court on October 11, 1937 entered an order directing Woolling to terminate all manufacturing operations, excepting only such as are necessary for the fulfillment of orders or to prevent unusual depreciation, and authorized him to enter into discussion, at any time, with his employees regarding wages, hours and conditions of employment. Woolling closed the plant, but within 2 or 3 days operations were gradually resumed until on November 1, 1937 some 57 employees were at work. Woolling recalled all but 3 of the 31 non-union employees, but only 29 of the 96 members of United. Among those refused reinstatement were the 14 persons found by the Board to be the victims of unlawful discrimination.

Beginning about the latter part of August 1937 Woolling, the two Daughertys, and superintendents Connor and Randall interrogated certain employees concerning their membership in United and inquired whether other employees had joined and, while questioning the men, they indicated displeasure at the activities of United and sought to block the spread of the organizing movement. The following are illustrative of such conduct. James C. Daugherty asked one Scott whether he belonged to United and when Scott told him he did, Daugherty replied: "Well, Scotty, I hate that, I think the old man [H. E. Daugherty] will shut the plant down." Connor, on learning that employee Maynard was a member of United, said to Maynard "You may lose your job" and under similar circumstances Connor said to other employees "that their adherence to United would result in the closing of the plant." On October 11 H. E. Daugherty dismissed Scott thus: "Scotty, one time you stood mighty high with me, but that is all over now. When 4 o'clock comes * * * your work here is over. * * * You are permanently away from here." About two weeks after the plant had resumed operations and after one Peters had informed this same Daugherty that he was a member of United, Daugherty said to Peters: "Well, there will never be a job here for you. I am organizing this plant. I am doing all the hiring and firing. I am boss around here and intend to continue to be boss."

Randall requested Myrna Heady, an employee, to obtain for him the names of all the employees who were members of United and told her to go among them and have them indicate upon a veneer tape whether they were members. She approached Holyfield, who was president of the United, and requested that he state whether he was a member. Holyfield told her he would not so indicate on the tape, but if Randall desired to know how many had joined United he would tell him. Randall, having learned of what Holyfield told Heady, approached Holyfield and said, "I figured you would block Myrna."

It appears that after October 11, 1937, Woolling notified Whitman that H. K. Bachelder would act as his spokesman. A review of the record thereafter indicates and conclusively proves that during the period from October 13, 1937 to June 2, 1938 a number of conferences were held, all of no avail, and it is clear that neither Woolling nor Bachelder made any real effort to reach an agreement with United. In the conference of June 2, 1938 Whitman met with Bachelder and two Indiana State labor conciliators and explained that the proposed contract called for recognition of United as the exclusive bargaining agent to which Bachelder replied: "Oh, no; nothing of the kind. I wasn't called upon to recognize a Union." At that same conference, when an effort was made to discuss the question of the reinstatement of the employees, Bachelder replied: "That is not a part of negotiation. Negotiation contemplates an agreement for future activities but does not contemplate a settlement of past grievances. It involves future relationships for employer and employees. It is toward the future and not toward the past. They are two distinct and separate situations and the law recognizes them. It would be a waste of time to say whether this man ought to be working in place of somebody else or, anything with reference to that." We note here that at no time was the refusal to recognize United and bargain with it based upon a lack of a majority of the employees, or upon an absence of a majority in an appropriate unit.

Such was the situation with which the Board had to deal.

█ Section 8(5) of the National Labor Relations Act, 29 U.S.C.A. § 158(5), declares it an unfair labor practice for an employer to refuse to bargain collectively with the representatives of his employees subject to the provisions of § 9(a). The latter section provides that the subject mat-

ter of collective bargaining covers rates of pay, hours of employment, or other conditions of employment. In Globe Cotton Mills v. National Labor Relations Board, 5 Cir., 103 F.2d 91, 94, the court said: "there is a duty on both sides * * * to enter into discussion with an open and fair mind, and a sincere purpose to find a basis of agreement touching wages and hours and conditions of labor, and if found to embody it in a contract as specific as possible, which shall stand as a mutual guaranty of conduct, and as a guide for the adjustment of grievances." We approve and adopt what was said there.

In our opinion the facts above related established a reasonable basis for the conclusions of the Board that Woolling had refused to bargain collectively with the United as the exclusive agent of his employees and that he did interfere with, restrain and coerce his employees in the exercise of their rights to self-organization guaranteed in § 7 of the Act. National Labor Relations Board v. Friedman, etc., 301 U.S. 58, 75, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352; National Labor Relations Board v. Fansteel, etc., 306 U.S. 240, 251, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. '599; and National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 358, 60 S.Ct. 569, 84 L.Ed. 799.

We now discuss the question of discrimination in regard to the hire and tenure of employment. The Board found that most of the employees who had been refused reinstatement were experienced and had been employed by Veneer and Woolling for many years. It also found that upon reopening the plant Woolling, instead of choosing for reinstatement the men best qualified for the positions available, employed men he believed least likely to interfere with his plans for stamping out union activities.

A review of the record discloses that prior to the shutdown Woolling had employed 96 union members, constituting 76% of the total number of employees, and 31 non-union employees which represented 24% of the total. On November 3, 1937 he had 57 persons working, 29 union and 28 non-union. Only 3 non-union employees were not reinstated. Among the union men not reinstated were the president, vice-president and treasurer of United, two leaders of the organizing campaign and nine employees who had been active in soliciting members for United.

Counsel for respondent insists that in determining discrimination substantial evidence must support the finding as to each man, and the fact that one was found to have been discriminated against is not evidence that any other was discriminated against. Likewise, he says, the fact that the 14 men named included a large proportion of those most active in United is not evidence that any man was discriminated against.

However that may be, the disproportionate treatment of union and non-union workers may under certain circumstances be very persuasive evidence of discrimination, Montgomery Ward & Co. v. National Labor Relations Board, 7 Cir., 107 F.2d 555, and evidence that the men not reinstated were members of a negotiating committee may be sufficient to support a finding that such employees were discriminated against. New York Handkerchief Mfg. Co., v. National Labor Relations Board, 7 Cir., 114 F.2d 144.

It is unnecessary to recite in detail the evidence supporting the Board's findings as to discrimination. We have read and considered it and experience no difficulty in arriving at the conclusion that there was ample evidence justifying the finding that these employees had been discriminated against.

Respondent raises the point that the men were not Woolling's employees. He says that is so because their work had ceased solely as a consequence of the order of the Marion Circuit Court.

This record clearly shows and the Board found that the order of the court did not contemplate a permanent cessation of operation, nor did Woolling so construe the order, as the plant reopened almost immediately. We think there was evidence to sustain the finding. We conclude that under the facts here there was not a severance of the relation of employer and employee. North Whittier Heights, etc., v. National Labor Relations Board, 9 Cir., 109 F.2d 76 and National Labor Relations Board v. Waterman Steamship Corp., 309 U.S. 206, 60 S.Ct. 493, 84 L.Ed. 704.

There is substantial evidence to support the Board's findings that the employees named in (2) (c-d-e) were discriminated against because of their membership in United in violation of § 8(3), and the order that they be offered reinstatement and made whole will be enforced.

*Third.* Respondent insists the order is invalid because (a) if there was a violation of the Act he was not the guilty person; (b) to enforce the order of the Board will interfere with the jurisdiction of the Marion Circuit Court; and (c) the persons ordered reinstated were not employees. It is obvious from what we have already said that these claims have been discussed and decided adversely to respondent.

The point is also pressed that petitioner has forfeited all right to enforce the order of the Board because of laches. The complaint was issued September 26, 1938. The order was entered on March 22, 1940 and the petition for enforcement was filed in this court on November 8, 1940. In a like situation, National Labor Relations Board v. Aluminum, etc., 7 Cir., 120 F.2d 567 decided March 4, 1941, our court said: "* * * we do not understand that orders lose their validity or cease dynamic existence merely because the Board delays in seeking an enforcement order. From the time of its entry, it was binding upon respondents. If they believed it should not be enforced, they had a right to assert such belief in a proper proceeding. This they failed to do." We think what was said in that case is applicable here.

Paragraphs 2(c-d-e) direct that certain sums be deducted from the amounts to be paid to the employees named, and paid to certain specified governmental agencies. Such a direction is invalid. Republic Steel Corp. v. National Labor Relations Board, 311 U.S. 7, 61 S.Ct. 77, 85 L.Ed. ——.

The Board's order is modified with the views herein expressed and as so modified, its petition for enforcement is allowed.