## THE PENNSYLVANIA COMPANY
### *v.*
## JAMES A. CHAPMAN.

*Opinion filed December 20, 1905—Rehearing denied April 5, 1906.*

1. PLEADING—*general issue does not raise question of capacity in which defendant is sued.* By pleading only the general issue the defendant railroad company impliedly concedes that at the time of the alleged injury it was operating the particular line of road mentioned in the declaration and that the persons in charge of the trains were its servants.

2. TRIAL—*question whether defendant was operating railroad is one of fact on conflicting evidence.* If the testimony is conflicting as to whether the defendant railroad company was operating the line of railroad at the time of the injury, as alleged in the declaration, the question is one of fact for the jury under the instructions of the court.

3. RAILROADS—*acceptance of benefits from relief fund in lieu of damages is valid.* Under an agreement by a railroad employee, on joining the relief department, that he will accept the benefits from the relief fund in discharge of his claim against the company for damages in case of injury, his acceptance of benefits is binding; but the agreement must be construed in connection with the by-laws of the relief department in order to arrive at the intent of the parties.

4. SAME—*effect where a company fails to comply with its relief fund agreement.* Upon the failure of a railroad company to comply with its relief fund agreement with its employee the latter is entitled to bring an action for damages for his injury, and the company, although entitled to credit for the amount of benefits paid and accepted, cannot successfully plead the agreement in bar of the action.

5. SAME—*when relief fund agreement is violated.* Where the by-laws of the relief department of a railroad company provide for payment to an injured employee of a certain sum per day "during the continuance of his disability," the payment of the specified benefit up to the time the injured employee receives his "return to work card" is not a full performance of the agreement, where the employee's wound grew worse after a week's work and he was refused further benefits although he continued to be disabled.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is an action on the case brought by James A. Chapman against the Pennsylvania Company, operating the Pittsburg, Cincinnati, Chicago and St. Louis railway, to recover for personal injuries sustained.

The declaration alleges that on January 16, 1898, the defendant was operating a certain railroad in the southern portion of the city of Chicago, and plaintiff was engaged by defendant in assisting to switch cars of defendant under the direction of its employees, and while engaged in placing a certain link on a car, for the purpose of coupling the same to other cars, and while using due care and caution for his own safety, the defendant wrongfully, carelessly, negligently, improperly and without warning to plaintiff caused certain other cars and engines of defendant under the control of other employees of defendant to be violently run, thrown or "kicked" against said car on which plaintiff was so engaged, causing said cars to bump or be thrown violently together, catching and crushing plaintiff's right hand and causing a total loss of the same.

The evidence shows that at the time of the accident the plaintiff was working for the defendant as a switchman in the yards at Fifty-ninth street, in the city of Chicago, which consisted of a large number of tracks extending north and south. The part of the yard and tracks north of Fifty-ninth street was called the north end of the yards, and the part south of that street was called the south end of the yards. As the trains came into the yards from the south they were broken up by the switching crews, and the cars which were to go upon the different tracks in the north end of the yards were "kicked" across the street onto their proper tracks in the north end of the yards. The plaintiff was working in the north end with the transfer crew, consisting of the engineer, fireman, conductor and three switchmen. It was the duty of the transfer crew to couple the cars together into trains after they had been "kicked" across the street, and to prepare the trains to be taken north to their various destinations in the

city. The switching crew working in the south end of the yards had nothing to do with the cars after they were "kicked" across the street into the north end, and the transfer crew had nothing to do with the cars before that time. Several cars stood on track 16 in the north end of the yards. Plaintiff went between two of these cars for the purpose of getting them ready to be coupled together. While he was between them the switching crew in the south end "kicked" a car across Fifty-ninth street onto track 16 and against the car on which the plaintiff was working, catching his hand between the bumpers, causing the injury.

Upon a trial before the court and a jury, judgment was rendered for $12,183.50, which has been affirmed by the Appellate Court for the First District, and to reverse this judgment an appeal has been prosecuted to this court.

GEORGE WILLARD, (SAMUEL P. WHEELER, of counsel,) for appellant.

J. R. BECKETT, B. F. KLEEMAN, and KITT GOULD, for appellee.

Mr. JUSTICE WILKIN delivered the opinion of the court:

It is first insisted as a ground of reversal that the appellant, the Pennsylvania Company, did not own or operate the tracks, engines and cars in question, nor was the appellee in its employ at the time of his injury. In support of this contention it is contended that the tracks, engines and cars in question were operated by the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company, commonly called the Panhandle, and that the appellee was in the employ of the latter company at the time of the injury. Appellee contends that the Panhandle was a part of appellant's road and was being operated by it, and that he was in its employ. The suit was brought against the appellant company, and the declaration alleged that "the Pennsylvania Company, a corporation, operated the Pittsburg, Cincinnati, Chicago and St. Louis Rail-

way Company," and that the appellee was injured while the appellant was thus operating the road. To this declaration appellant filed the general issue only. In the case of *McNulta* v. *Lockridge,* 137 Ill. 270, we decided that the general issue alone does not put in issue either the character in which the plaintiff sues or the character or capacity in which the defendant is sued. In this case the appellant, by filing only the general issue, impliedly conceded that at the time of the alleged injury it was operating the particular line of road mentioned in the declaration, and that the operators in charge of the trains were its servants and employees.

Independently of this question of pleading, evidence was offered by both sides as to the operation of the road at the time of the injury. Appellee testified that he was injured upon appellant's road while in its employ and while the road was being operated by it. Appellant offered evidence to show that the Panhandle road was not owned or operated by it. The court instructed the jury that unless they believed, from the evidence, that the appellant company itself, or by a corporation known as the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company, was operating the track and road at the time and place of the accident, then appellee could not recover. The operation of the road was a question of fact for the jury, which was properly submitted under the instructions of the court. There was evidence fairly tending to support the verdict, and for this further reason there was no error in the refusal of the court to instruct the jury to find for the defendant on the ground that the wrong company had been sued.

The appellee made application for employment November 26, 1897, to Walton, the superintendent of the Panhandle company, and was employed by him. The next day he made application, in writing, for membership in the relief department of the company, and his application contained the following provision: "I agree that the acceptance of benefits from the said relief fund for injury or death shall operate

as a release of all claims for damages against said company arising from such injury or death which could be made by or through me, and that I or my legal representatives will execute such further instrument as may be necessary formally to evidence such acquittance. I also agree that this application, when approved by the superintendent of the relief department, shall make me a member of the relief fund and constitute a contract between myself and the said company, or with any other company that is now or may hereafter be associated with said company in the management of the relief department in case of the transfer of my service to any such other company during membership in the relief fund, and that the terms of this application and the regulations of said department shall, during my membership, be a part of the conditions of my employment by the said company or either of such other companies, and that the same shall not be avoided by any change in the character of my services or locality where rendered while in such employment." He was admitted to membership December 1, 1897, and was a member when the accident occurred.

The Pennsylvania Company, at the time of the accident, was and for some years before had been associated with the Panhandle company in the management of the relief department of the two companies, which was carried on in the name of the "Voluntary relief department of the Pennsylvania lines west of Pittsburg." Under the by-laws of that department plaintiff was required to contribute to the department $2.25 per month, and was entitled to receive from it, in case of disability, $1.50 per day for the first fifty-two weeks and seventy-five cents per day thereafter during the continuance of his disability. After his injury he was paid by the relief department benefits at the rate of $1.50 per day from January 17 to August 15, 1898,—in all 211 days, amounting to $316.50. The medical examiner of the relief department then gave him a "return to duty card," which stated that he had recovered and would be able to return to duty August 16,

1898. He reported for duty and was on that day put to work. He worked less than a week, when his wound broke open again and he was unable to continue. He then applied for further benefits to the medical director who gave him the card to return to duty and also to the persons from whom he had received checks for the benefits which had been paid him, and was told that there was nothing in the relief department for him,—that he had received all that he was entitled to,— and he has been paid no benefits since August 15, 1898, and has been during at least a part of that time disabled and unable to work by reason of the injury sued for.

It is insisted by counsel that plaintiff waived his right of action against appellant by accepting benefits from the relief department, and that appellant is entitled to the benefit of the contract with the relief department. A similar contract was before us in the case of *Eckman* v. *Chicago, Burlington and Quincy Railroad Co.* 169 Ill. 312, and we there held that such agreements were valid and binding between the parties, and that the voluntary acceptance by a railroad employee of the benefits provided for in such an agreement, with the full knowledge that such contract provided that the acceptance of benefits under the same should operate as satisfaction of all claims against the railroad company by which he was employed, on account of injuries received, would be a bar to a subsequent suit for such injury. It is the receipt of benefits under the contract, and not the contract itself, that binds him. It is not claimed in this case that the plaintiff received the full benefits he was entitled to under his agreement with the relief department. On the contrary, the undisputed evidence is that his disability continued after he was given the card to return to duty and that his application for further benefits was refused. The by-laws, as we have said, entitled him to receive $1.50 per day for fifty-two weeks, if his disability continued so long. He only received that amount for about thirty weeks and was refused payment for the remainder of the time. The most that could be claimed would

be that the medical examiner's "return to duty card" would be *prima facie* proof that his disability was removed. Here the evidence shows that his injury returned within a week, and the by-laws of the department clearly contemplate that in such case the relief benefits shall continue. Admitting this, however, counsel for appellant state their contention on this branch of the case as follows: "Our position upon this point is, that the intended effect of the contract was that the acceptance of benefits—not all the benefits, but any benefits—under the contract by appellee was intended to have the effect of releasing any cause of action appellee then had for the injuries received." If this position is tenable, then if plaintiff had received a single week's benefits and been denied and refused all further payments, however serious may have been his injury, he would have been absolutely barred of his action against the company.

While we see no reason why, under the facts, the appellant company may not avail itself of the benefits of the agreement between the relief department of the Panhandle company and plaintiff, that contract must receive a reasonable construction, and it must appear that the contract, so reasonably construed, was complied with on the part of the appellant. We agree with counsel that the contract must be interpreted according to the intent of the parties, but we do not think it can be seriously contended that it was contemplated in this case that either party should be bound by a partial performance on the part of the other. The whole contract must be construed together. The agreement on the part of the plaintiff that the acceptance of benefits from the relief fund should operate as a release of all claim for damages against the company is to be construed in connection with the by-laws, which amount to an agreement on the part of the relief department that it would pay him certain specified benefits. A party cannot be allowed to avail himself of the benefits of a contract which he has admittedly violated. If the defendant below had shown that the plaintiff received

the full benefit of his contract or that his failure to do so was the result of his own fault, it might well have been said that this suit was thereby barred. That is not this case, the distinguishing feature of which is that the relief department refused to pay further benefits. Had the plaintiff refused to receive those benefits, as in cases cited by counsel, a very different question would be here presented. The breach of the contract in this case was that of the defendant alone. To sustain the position of counsel for appellant would be to hold that whenever an employee of a railroad company becomes a member of the relief department and receives any benefits whatever therefrom, he must be conclusively held to have elected to look to that department alone for all damages sustained while in the service of the company. We know of no authority or good reason for such a position. In our opinion, upon the failure on the part of the company to comply with the terms of the agreement the plaintiff had the right to bring his action against it, and that the company is only entitled to credit for the amount shown to have been paid by the relief department, but cannot successfully plead the agreement in bar of this action without showing a compliance with the same on its part.

Objection is next made to the refusal of the tenth instruction offered by appellant, which was to the effect that unless appellant operated the road in question the plaintiff could not recover. The substance of this instruction was given in another instruction, and hence appellant has no cause for complaint.

Complaint is also made of the refusal of the court to give to the jury the thirteenth instruction offered on behalf of appellant. This instruction attempted to define the term "fellow-servants." The substance of this instruction was also covered by another instruction given to the jury.

Upon a consideration of the whole case we find no reversible error, and the judgments of the circuit court and Appellate Court will be affirmed.    *Judgment affirmed.*