**Robert Carr, Administrator, Plaintiff in Error, v. United States Silica Company, Defendant in Error.**

### Gen. No. 5071.

1. INSTRUCTIONS—*what may be considered upon application for peremptory.* Upon a motion to direct a verdict for defendant, the court is not at liberty to weigh the evidence, or to determine that there is more evidence to support a theory of the case favorable to the defense than there is to support a theory favorable to plaintiff. If there is any evidence in the case from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find all the material averments of some one count of the declaration proved, then the trial judge must submit the cause to the jury; but if there is not such evidence, or if there is a mere scintilla of evidence tending to support plaintiff's case, then the court may direct a verdict.

2. PLEADING—*what general issue admits; what not.* The plea of the general issue admits operation and control of instrumentalities

alleged. but it does not admit the relation of master and servant between the parties.

3. APPEALS AND ERRORS—*when cross errors essential to review.* In the absence of cross errors, rulings made against the prevailing party cannot be urged as erroneous.

4. MASTER AND SERVANT—*what question for jury in action by latter to recover for injury sustained.* If, as the business was conducted, it was the duty of the master to furnish tools and appliances with which the work was to be done, then it was a question for the jury whether the appliances furnished were dangerous, and whether the servant knew that fact and assumed the risk of using them and whether the master was negligent in furnishing them.

Action in case for death caused by alleged wrongful act. Error to the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the April term, 1909. Reversed and remanded. Opinion filed March 11, 1910. Rehearing denied April 13, 1910.

BUTTERS & ARMSTRONG, for plaintiff in error.

WILLIAM D. FULLERTON, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On April 24, 1906, while Roy Hart was loading a horizontal hole in a sand bank with dynamite he was killed by the premature explosion of the dynamite. His next of kin were brothers and sisters. His administrator brought this suit against the United States Silica Company to recover for the loss to said next of kin. The declaration consisted of two original and three additional counts. Each count charged, in substance, that defendant was in the business of mining and selling and transporting sand, and was possessed of a certain tract of land, with buildings and machinery, near Ottawa, and had a large mine in which it was mining sand, and had a number of employes engaged at or near the bottom of the mine in mining the sand, and used dynamite to blast loose the sand rock in said mine, and elevated the same by pumps to its warehouse and cars; and that Hart was

working in said mine blasting sand from the side of the bank, and was in the exercise of due care, and was killed by an explosion of dynamite, and left the next of kin above referred to, who were injured in their means of support. The first count averred that defendant negligently permitted and caused its employes, while blasting sand rock in said mine, to use iron tubes for the purpose of inserting dynamite into holes drilled for that purpose, and that while Hart was at work in said mine for defendant, by means of the negligence of defendant aforesaid a charge of dynamite then being inserted through an iron tube into a hole in said sand bank prematurely exploded, killing Hart. The second count charged that defendant negligently permitted and caused "divers of its said employes and others then working in said mine, including plaintiff's intestate" to use certain iron tubes and insert dynamite through said tubes into the sand bank, and thereby causing the dynamite to rub against the inner walls of the tubes, and causing friction; by means whereof Hart, "while then and there engaged in work in mining sand for the defendant in the manner aforesaid" was killed by the premature discharge of dynamite while being inserted through said tube. The first additional count charged that Hart "was engaged as a servant of the defendant in said mine in this, that one William Leonard, being then and there in the employ of the defendant to blast, wash and elevate sand from said mine into bins, warehouses and cars of defendant, procured the plaintiff's intestate to perform services for the defendant by way of assisting the said William Leonard in the aforesaid services of blasting, washing and elevating said sand into bins, warehouses and cars as aforesaid, and while said plaintiff's intestate was so in the employ of defendant as aforesaid" defendant negligently failed to provide safe and proper tools for its servants, including Hart, to use in the blasting and mining of sand as aforesaid, but negligently furnished its servants, including Hart,

for the purpose of mining and blasting sand, unsafe and dangerous tools and appliances; and that while Hart was inserting a charge of dynamite into a hole drilled for that purpose in the sand rock, with said unsafe and improper tools and appliances so furnished by the defendant, being an iron tamping stick made of a piece of gas pipe an inch and a quarter in diameter and eighteen feet long, said dynamite came in contact with the iron tamping stick and exploded, and Hart was killed. The second additional count described the mine more fully, and charged that defendant negligently failed to provide its servants engaged in the mining of said sand with safe and proper tools and appliances and sufficient and proper instruments for the performance of their services; and that on the day aforesaid defendant negligently provided its employes, including Hart, with an iron tamping stick or ramrod to be used in loading dynamite through an iron cylinder in the holes drilled in the sand rock, and that by means thereof Hart, while inserting a charge of dynamite through an iron cylinder into a hole driled in the sand rock, was killed by the explosion of said dynamite by means of said iron tamping stick. The third additional count charged that defendant negligently caused and permitted its servants to drill holes into the sand rock a distance of eighteen feet horizontally, and then insert into such holes a large iron pipe eighteen feet long, of the inside diameter of two inches, and then to push dynamite through said pipe to the end of said hole by means of an iron ramrod or tamping stick made from a piece of gas pipe eighteen feet long and an inch and a quarter in diameter, with a wooden plug in the end thereof; and that by means thereof Hart was killed by the explosion of dynamite, while he was inserting dynamite through said iron pipe with said iron tamping stick, by reason of the friction of the iron ramrod with the iron casting. Some of the counts charged that Hart did not know or assume the dangers incident to doing that work in that manner, and that defendant knew the

danger.   Defendant filed a plea of not guilty only.
Upon a jury trial, at the close of the plaintiff's evi-
dence, the court instructed the jury to find the de-
fendant not guilty.  Such verdict was returned, a mo-
tion by plaintiff for a new trial was denied, defendant
had judgment for costs, and plaintiff has sued out
this writ of error to review said judgment.

The proof showed that defendant owned the sand
pit; that it was ninety or one hundred feet deep; that
the bottom of the pit was of irregular shape, and
about two acres in extent; that the sides of the pit
were composed of a sand rock, which was sometimes
hard and sometimes soft; that sand was obtained by
blasting off the sides of the pit in the following man-
ner:   A hole would be drilled into the side of the pit
in the sand rock by the use of a water drill.   Formerly
these holes were drilled twelve feet horizontally into
the rock; afterwards the holes were made sixteen feet
long.  After the hole had been drilled, the person do-
ing the blasting would push one or two sticks of dyna-
mite into the further end of the hole with a wooden
tamping stick or ramrod.   This small charge of dyna-
mite was then discharged by a cap and fuse.   This was
called "springing the hole."   This was done to form
a cavity at the inner end of the hole large enough to
receive the quantity of dynamite required to blast off
the rock.   Water was then forced into the hole, and
the sand loosened in springing the hole was in that
way washed out of the hole.   A large number of sticks
of dynamite was then pushed through the hole, one at
a time, into the inner cavity, by the use of the tamping
stick, which was always made two feet longer than the
hole.   Where the hole was drilled into the rock hori-
zontally, difficulty was sometimes experienced in push-
ing the dynamite through the hole into the inner cav-
ity, because some sticks of dynamite were liable to
lodge in small cavities in the bottom of the hole before
the end of the hole was reached.   After a heavy charge
of dynamite had been placed in the cavity, the hole was

filled with mud or sand, and tamped in with the tamping stick if tamping was needed to make the shot effective; but if it was not needed this tamping was not done. The dynamite was then exploded by means of a cap and fuse previously adjusted, and thereby a quantity of sand rock was blasted off from the side of the pit. A few weeks before Hart was killed, William Leonard, the man in charge of the work at the bottom of the pit, began drilling holes sixteen feet deep in the rock. It was found still more difficult to push the dynamite into a hole so far from the front. There was proof that about that time Leonard and Hart learned from a man who had worked in another sand pit near Ottawa that he used an inch and a half iron pipe through which to load the holes with dynamite. There is other proof that for several years iron pipe had been used by Leonard in that mine for loading the holes with dynamite, whenever any difficulty was experienced in getting the dynamite into the hole. There was such pipe lying all about the bottom of the pit, which apparently had been used, or was there to be used when necessary, in conveying water for the water drill, and also for washing out the sand after the springing of the hole. On the next working day following this conversation, after a hole had been sprung, Hart took an inch and a half pipe which he found in the pit and inserted it in the hole, and then pushed the dynamite through this iron pipe into the cavity with the wooden tamping stick. About two weeks before Hart was killed, the wooden tamping stick was broken. Defendant's foreman, who was located at the top, outside of the pit, was notified of that fact, and he screwed two pieces of small gas pipe together, and placed in the end a wooden plug six or seven inches long, and took this to Leonard and Hart and asked them if it would do for a tamping stick. Leonard replied that it would have to do till they got another wooden tamping stick. Hart thereupon used said small gas pipe to push the dynamite through the

inch and a half tube into the cavity. Two days later defendant's foreman took another wooden tamping stick into the pit and left it there. Hart thereafter used it for tamping mud and sand into the hole after the cavity had been filled with dynamite and the tube had been withdrawn, but he found this wooden tamping stick too crooked for the work of pushing the dynamite through the pipe, and so he continued to use the small iron tamping rod for that purpose. While he was driving in a stick of dynamite with this iron rod, in loading a hole with dynamite, the explosion occurred which killed him. A number of witnesses with much experience in this kind of work testified that it was very dangerous to drive dynamite through an iron pipe with an iron ramrod, and that there was great danger of causing the dynamite to explode by that means; some attributing the explosion to the contact of iron with iron, and saying that fragments of dynamite would be left along the route of the casting, and would be ground between the iron ramrod and the casing, and thereby exploded, and others that more or less sand would be in the casing, and that the rubbing of the sand between the two iron instruments would produce friction and sparks, and this would cause the dynamite to explode. Several witnesses testified that the danger was not removed by placing a wooden plug at the end of the iron tamping rod. No one saw Hart at the moment of the explosion, but the proof showed that Hart had brought to the vicinity of the mouth of the hole which was to be charged the number of sticks of dynamite he expected to insert for the charge, and the cap and fuse with which he intended to explode the dynamite, and that the cap and fuse were lying outside the hole and had not been used or exploded, and that only a part of the dynamite had been inserted when the explosion occurred.

Upon a motion to direct a verdict for defendant, the court is not at liberty to weigh the evidence nor to determine that there is more evidence to support a

theory of the case favorable to the defense than there is to support a theory favorable to plaintiff. If there is any evidence in the case from which, if it stood alone, the jury could, without acting unreasonably in the eye of the law, find all the material averments of some one count of the declaration proved, then the trial judge must submit the cause to the jury. But if there is not such evidence, or if there is a mere scintilla of evidence tending to support plaintiff's case, then the court may direct a verdict. Libby, McNeill & Libby v. Cook, 222 Ill. 206. Defendant contends that there is no evidence in this record from which the jury could find that the relation of master and servant existed between the defendant and Hart; that there is no evidence from which the jury could find that the explosion was caused by the means alleged in the declaration; and that there is no evidence from which the jury could find that the defendant failed to furnish tools which were reasonably safe for the use intended. Plaintiff insists that his evidence on each of these subjects was sufficient to authorize a verdict for the plaintiff, and also that the plea of not guilty did not put in issue the allegation that the deceased was a servant of the defendant, which allegation is found in most but not in all of the counts of the declaration, as will be seen by the foregoing statement.

At common law, and in the earlier decisions in this state, the rule was that the plea of not guilty put the plaintiff upon proof of the whole charge contained in the declaration. City of Champaign v. McMurray, 76 Ill. 353. This rule has gradually been departed from to a limited extent. In McNulta v. Lockridge, 137 Ill. 270, it was held that the plea of not guilty admitted the character and capacity in which the defendant was sued. In Illinois Life Association v. Wells, 200 Ill. 445, it was held that the plea of the general issue admitted the capacity in which the defendant was sued, together with the change of name and assumption of liabilities alleged in the declaration. In Chicago City

Railway Co. v. Carroll, 206 Ill. 318, it was held that there was evidence tending to show that appellant owned and operated the railroad, and therefore it was unnecessary to determine whether those allegations were admitted by the plea of not guilty. In none of the foregoing cases was the relation of master and servant involved. In Penn. Co. v. Chapman, 220 Ill. 428, the declaration alleged that the plaintiff was the servant of the defendant, and that he was injured in that service. The general issue was filed. It was held that thereby defendant admitted that at the time of the injury it was operating the line of railroad mentioned in the declaration, and that the operators in charge of the train were its servants and employes, though it was shown that, independent of the question of pleading, each side offered evidence on that question, and it was submitted to the jury under the instructions of the court. The proof showed without dispute that the appellee was the servant of whatever company was operating that particular railroad, and it was in effect held that under the plea of not guilty the appellant could not deny that it was operating that railroad. In Chicago Union Traction Company v. Jerka, 227 Ill. 95, a case not involving the relation of master and servant, it was held that the plea of not guilty did not put in issue the ownership or possession or operation of the property or instrumentalities, which caused the injury; but that the defenses based upon an intended denial of those allegations of the declaration must be pleaded specially, and this as a matter of *stare decisis,* regardless of the basis of the original ruling to that effect. In Pell v. J. P. & A. R. R. Co., 238 Ill. 510, a case of an injury to a passenger on an interurban line, it was held that the plea of not guilty did not put in issue the ownership of the track or the control of the cars. In Winn v. C. C. C. & St. L. Ry. Co., 239 Ill. 132, where a person driving on a highway was killed by being struck by a train upon a railway, it was held that the character in which the defendants

were sued was not put in issue by the plea of not guilty. In Brunhild v. Chicago Union Traction Co., 239 Ill. 621, where a street car struck and killed a man driving along a highway, it was held that the plea of not guilty did not put in issue the appellant's ownership and operation of the instrumentalities that caused the injury. It will be seen that but one of the foregoing cases involved the relation of master and servant, and that in that case it was clearly proved that the person injured was in the employ of the party who owned and operated the railroad upon which he was injured, and that it was there held that the ownership and operation of that railroad by the appellant was not put in issue. On the other hand, there are numerous cases where it has been treated as essential that where the cause of action is founded upon a violation by the master of the duties growing out of the alleged relation of master and servant between the parties, the plaintiff must prove the truth of his allegation that he was the servant of the defendant. Condon v. Schoenfeld, 214 Ill. 226, was such a case.

We therefore conclude that those counts of the declaration which alleged that Hart was the servant of defendant required proof of that allegation, but that under the plea of not guilty it was admitted that defendant was the owner and controlled and operated the instrumentalities connected with the blasting of the sand from this rock.

There was proof that Hart was in the employ of the defendant. Two witnesses testified that he was working for the defendant. Leonard, who had charge of the work at the bottom of the pit, testified that he had been in the employ of the defendant for several years, and was in its employ at the time of this injury. Leonard hired Hart and paid him; but that did not prove but what he hired him for the defendant. Leonard testified on cross examination that he was hired to do this work at so much per bin, each bin holding about thirty-two tons; that he did the blasting, got the sand

out of the pit, turned it over to the company at the top, and was paid so much a bin; that the men working in the pit were working for him; and that Miller, the superintendent at the top, had nothing to do with employing the men who did the pit work. Defendant then offered to prove by Leonard that he had a contract with defendant for doing all the mining and blasting of sand in the sand pit: that he was to furnish his own help and pay them, and receive a certain rate per bin for all the sand produced; and that from the time that this contract was made he employed and discharged and paid the men who worked in the pit, including Hart. The court sustained an objection interposed by plaintiff to this offer. No cross errors are assigned, and the correctness of this ruling is not presented for review. There was other proof tending to show that the men working in the pit were working for the defendant to some extent and in some ways. The man who repaired the pumps worked in the pit a part of the time, and worked on top a part of the time, and there was nothing to indicate that he was working for two masters, or that any separate account was kept of his time in the pit and of his time at the top. The proof showed that Hart worked on top a part of the time when work was slack in the bottom of the pit, and there is nothing to indicate that he changed employers when he did so. The dynamite used in blasting was obtained from the top, from the storehouse of defendant. When the wooden tamping stick broke, either Leonard or Hart applied to the foreman at the top for another tamping stick, and the iron tamping rod was prepared by him and supplied for temporary use, and then another wooden tamping stick was made and brought down, with the inquiry whether it was sufficient. Apparently all parties recognized the duty of the defendant to furnish all the appliances for doing the blasting. That it was dangerous to use the iron tamping stick provided by the defendant appears from the testimony. Hart being dead, no direct proof was

obtainable as to whether he did or did not know that it was dangerous; but while he had worked about this and other sand pits, he had never worked at blasting or the use of dynamite till a comparatively short time before he was killed. Leonard, who employed and set him to work, did not warn him of the dangers.

We are of opinion that there was sufficient evidence of the relation of master and servant between defendant and Hart so that the court could not direct a verdict for defendant on the ground that there was no evidence from which the jury could reasonably find that that relation existed: although the testimony of Leonard, just before the ruling above referred to, raised some question as to the exact nature of that relation. At least one count of the declaration did not allege that the relation of master and servant existed. If, as the business was conducted, it was the duty of the defendant to furnish tools and appliances with which the work was done, then it was a question for the jury whether the appliances furnished were dangerous, and whether Hart knew that fact and assumed the risk of using them, and whether defendant was negligent in furnishing them. We conclude that there was sufficient evidence on these subjects so that the cause should have been submitted to the jury.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*