**Peter Hurst, Appellee, v. James M. Sholl et al., Appellants.**

## Gen. No. 7,227.

1. PLEADING—*extent of admission of allegations of declaration by general issue.*   In an action by the fee owner for damages from subsidence resulting from mining, allegations charging ownership and operation of the underlying mineral rights in defendants are admitted by a plea of the general issue in the absence of any special plea of denial.

2. MINES AND MINERALS—*proof of ownership and operation of mineral rights in action for damages for subsidence.*   In an action for damages for injuries to the fee by subsidence resulting from mining, ownership of the mineral rights by defendant and their operation thereof are shown by a deed conveying such rights to defendants and a will containing a devise of an interest to one of them together with evidence tending to show acts of ownership in the defendants in the operation of the mine, including the making of leases under which defendants furnished part of the equipment for its operation.

3. MINES AND MINERALS—*proof of negligent operation causing subsidence.* In an action by the fee owner against the owners and operators of underlying coal rights for damages from subsidence alleged to have resulted from removal of the coal and failure to leave sufficient support by way of pillars and otherwise, the subsidence is shown to have resulted from the causes alleged by evidence that the formation of the roof and bottom of the mine was such as to cause settling and breaking of the roof wherever the coal was excavated and also settling of the pillars and that insufficient support was left, it not being claimed that the buildings on the premises contributed to the subsidence.

4. DAMAGES—*excessiveness of award for injury to house from subsidence due to mining.* An award of $4,500 for damages to a house and grounds from subsidence caused by mining is not excessive where the evidence shows material injury to the house in many respects, sinking of the surface of the ground requiring extensive filling, and the cracking of walks and cisterns, and that $900 has been expended in repairs on the house and that more than $3,000 more would have to be expended to put it in the condition it was in before the subsidence took place.

5. HARMLESS AND PREJUDICIAL ERROR—*invited ruling on evidence not prejudicial.* In an action for damages to land and a building located thereon by subsidence due to mining, the exclusion by the court of evidence as to the market value of the premises before and after the subsidence on the objection of defendants and the adoption of a different measure of damages was not prejudicial to defendants, the ruling having been invited by them.

6. DAMAGES—*measure for injury to realty by subsidence.* The cost of repairing the buildings and restoring the premises to their original condition prior to the injury from subsidence and not the depreciation in value is the correct measure of damages in an action for damages for subsidence due to improper mining methods where the declaration charged and the evidence shows that the grounds subsided substantially over a considerable area so that extensive filling would be required, that walks and cisterns were cracked and ruined and that the buildings settled and the walls and foundations cracked, fixtures were displaced, furnace pipes disconnected and that extensive repairs would be required to restore the premises.

Appeal by defendants from the Circuit Court of Peoria county; the Hon. CHARLES V. MILES, Judge, presiding. Heard in this court at the April term, 1923. Affirmed. Opinion filed March 12, 1924. *Certiorari* denied by Supreme Court (making opinion final).

CAMERON & ANDERSON, SHELTON McGRATH and DAILEY, MILLER, McCORMICK & RADLEY, for appellants

CHARLES C. DICKMAN and BARNES, MAGOON & BLACK, for appellee.

MR. JUSTICE JETT delivered the opinion of the court.

This is a suit brought by Peter Hurst, appellee, against James M. Sholl, Samuel V. Sholl and Mary L. Sholl, individually and as executrix of the last will and testament of Henry S. Sholl, deceased, to recover damages claimed to have been sustained by reason of a subsidence caused by the mining of coal under appellee's house. After this proceeding was instituted Samuel V. Sholl departed this life, his death was suggested upon the record and his administratrix, Elizabeth Lackey, substituted as a defendant.

A trial before the court and jury resulted in a verdict for $5,000 in favor of appellee and against the appellants. Motions for a new trial were made by appellants and overruled by the court upon the appellee entering a remittitur in the sum of $500. Judgment was entered against the appellants for the sum of $4,500 and costs of suit, from which said judgment appellants prosecute this appeal.

The declaration in this cause consists of four counts. It is charged in the first count that the plaintiff was seized and possessed in fee simple, excepting the coal and mineral rights, of a certain irregularly shaped piece of ground, which is described by metes and bounds in the declaration situated in the County of Peoria, Illinois, and containing twelve and 61/100 acres and that the plaintiff about the year 1911 improved said premises by erecting thereon a dwelling house, cisterns, fences, walks, and by planting trees, vines and shrubs. And the plaintiff averred that Henry S. Sholl, now deceased, and the defendants James M. Sholl and Samuel V. Sholl became the owners of the mineral rights under said described prop-

erty on, to wit, March 8, 1893, by purchase from one
Adam Sholl. Plaintiff further avers that the afore-
said Henry S. Sholl, deceased, departed this life on,
to wit, the 13th day of December, 1899; that he left a
last will and testament in which he devised his interest
in the aforesaid mineral rights under the aforesaid de-
scribed property to his widow, Mary L. Sholl. Plain-
tiff further charges that Mary L. Sholl was appointed
executrix of the last will and testament of the said
Henry S. Sholl, deceased, by the said last will and
testament of said Henry S. Sholl, deceased, and that
she qualified as such and at the time of the bringing
of this suit is still acting as such executrix.

Plaintiff further charged that the said Henry S.
Sholl, during his lifetime, and the defendants, James
M. Sholl, Samuel V. Sholl and Mary L. Sholl, as
widow and devisee of the said Henry S. Sholl, de-
ceased, were the owners of the mineral rights under
the aforedescribed property since the 8th day of
March, A. D. 1893, as aforesaid, and are still the own-
ers of the said mineral rights. Plaintiff avers that
the defendants Samuel V. Sholl, James M. Sholl and
Henry S. Sholl, during his lifetime, and Mary L. Sholl,
as executrix of the last will and testament of Henry S.
Sholl, and Mary L. Sholl, mined or caused to be mined
the coal under the premises of the plaintiff, by reason
whereof and while the plaintiff was in the exercise of
due care and caution in the construction of and for
the safety, protection and preservation of his afore-
said premises and the improvements thereof, on to wit,
the 2nd day of December, A. D. 1920, a large part of
the premises aforesaid subsided and thereby great
holes were left in the surface of the plaintiff's yards
and fields. The foundation of the house and the house
sank and were broken and were destroyed and were
left in a bad state of disrepair. The floors in the said
house and basement thereof were crushed and broken,
the doors thereof were badly damaged and his furnace
was broken and the cisterns were ruined and de-

stroyed, the walks were cracked and broken, and by means of the premises the plaintiff was forced to and did lay out divers sums of money amounting to, to wit, $2,500, in and about endeavoring to save, preserve and repair his aforesaid premises, and the plaintiff was forced to and did spend a large amount of labor in and about the protection of his premises, and that said labor was made necessary by reason of the fact that his land sank, and the plaintiff has been otherwise greatly injured and damaged, and will be forced to further lay out and expend large sums of money.

The second count of the declaration is the same as the first with the exception that it contains the averment that the defendants knew of the improvements on the premises.

The third is the same as the first count with the added averment: "That it was the duty of the defendants to leave pillars and other supports to support the premises of the plaintiff, nevertheless, wholly neglecting and disregarding their duty in that behalf, the defendants did not leave sufficient pillars or other supports, by reason whereof on, to wit, the second day of December, 1920, a large portion of the said premises of the plaintiff then and there sank."

The fourth count is the same as the first with the averment that: "The defendants, by their servants, lessees or licensees, extended or caused or allowed to be extended under the said premises of the plaintiff a certain drift mine," and "that the defendants by their servants, lessees or licensees had knowledge of the location of the plaintiff's premises and the improvements thereon."

To the declaration pleas of the general issue and of the statute of limitations were filed by all of the defendants. The plea of the statute of limitations sets up that the supposed cause of action in the declaration mentioned did not accrue within five years next before commencement of suit. Replications were filed to the pleas of the statute of limitations, averring that

the cause of action did accrue within five years before the commencement of the suit.

The fact that appellee was the owner in fee simple of the lands and premises mentioned and described in the declaration and as averred therein is not challenged. The proof clearly established his ownership. It is the contention of appellants that they did not remove the coal underlying the lands and premises of appellee, and if the same was removed and as a result thereof a subsidence of the lands of appellee was occasioned, the removal was done by the lessee of appellants and for that reason no liability would attach to them, and that if damages were occasioned the lessee would be the one that would be liable.

It will be remembered that the declaration charges that appellants were the owners of said mineral rights underlying the premises of appellee in March, 1893, and are still the owners of the same; that appellants, namely, Samuel V. Sholl, James M. Sholl and Henry S. Sholl, during his lifetime, and Mary L. Sholl, individually and as executrix, mined or caused to be mined the coal under the premises of appellee by reason whereof he suffered the injuries complained of in the declaration.

It will be further remembered that the only pleas filed by appellants were the general issue and the plea of the statute of limitations. The question therefore arises as to what if any allegations of the declaration were admitted by appellants by filing their several pleas of not guilty.

In *McNulta v. Lockridge*, 137 Ill. 270, a suit against a second receiver of a railroad for injuries inflicted while the first receiver was operating the road, and where the general issue alone was pleaded, it was held that this was an admission of the character and capacity in which the defendant was sued and also that at the time of the injury Cooley was receiver by appointment of court, as alleged in the declaration, and was then in possession of and operating said railroad as

receiver, and that the employees operating the trains on said road were Cooley's servants as receiver, and that on the date named in the declaration Cooley resigned that office and the resignation was accepted and the court appointed McNulta as such receiver and that he qualified and entered upon his duties as such receiver. In *Illinois Life Ass'n v. Wells*, 200 Ill. 445, there was an allegation in the declaration that defendant had been organized under a different name and had changed that name to Illinois Life Association, and it was argued that the cause should have been taken from the jury because there was no evidence tending to prove the change of name. The court held that the plea of general issue admitted the capacity in which the defendant was sued, and admitted the change of name and the assumption of liabilities as alleged in the declaration.

In *Pennsylvania Co. v. Chapman*, 220 Ill. 428, the declaration alleged that: "The Pennsylvania Company operated the Pittsburg, Cincinnati, Chicago and St. Louis Railway Company," when appellant was injured. It was held that by filing only the general issue appellant conceded that at the time of the injury it was operating the particular line of road mentioned in the declaration and that the operators in charge of the train were its servants and employees.

In *Chicago Union Traction Co. v. Jerka*, 227 Ill. 95, the *McNulta* case was approved and followed. The appellant there contended that the injuries sued for were occasioned by a car belonging to the Chicago Consolidated Traction Company and that plaintiff had not proved its allegation that the defendant owned and operated the street railway tracks, electric motors and other appliances thereunto belonging. It was held that under the plea of the general issue plaintiff was not required to offer proof in support of those allegations, and the *McNulta* and other cases are there relied upon.

*Winn v. Cleveland, C., C. & St. L. Ry. Co.,* 239 Ill. 132, was a suit against that company and the Cairo, Vincennes and Chicago Railway Company, in which the defendants pleaded only the general issue. There was an allegation that the former company owned and the latter company operated the railroad upon which the accident in question occurred. It was held that the only plea being the general issue, the character in which the defendants were sued was not put in issue. In *Brunhild v. Chicago Union Traction Co.,* 239 Ill. 622, a personal injury case, the company contended that there was no evidence that it was in possession and operation of the car that caused the injury. The court held that under the plea of not guilty the ownership and operation of the instrumentalities that caused the injury were not in issue. The cases thus far considered are against a corporation or corporations but the same rule applies when the proceedings are instituted against individuals. It is so held in *Carlson v. Johnson,* 263 Ill. 556.

Our attention has not been called to any decision of the Supreme Court modifying the rules as above stated. The decisions above cited have been followed and applied in many Appellate Court cases. Some of the cases above referred to were reviewed and the rules applied as herein announced in *Carr v. United States Silica Co.,* 153 Ill. App. 511, and also in *Thomas v. Anthony,* 179 Ill. App. 463, which was a case between natural persons.

In view of the state of the pleadings, we therefore conclude that the appellants admitted the ownership and operation of the mine; that the plea of not guilty did not put in issue the ownership, possession or operation of the mine which caused the injury alleged, but that a defense based upon an intended denial of such allegations of the declaration must be properly pleaded.

Moreover, appellee offered in evidence a deed from Adam Sholl to his sons, Henry S. Sholl, James M.

Sholl and Samuel V. Sholl, showing the record title to the mineral rights in question to be in them. Appellee also offered the will of Henry S. Sholl, deceased, and the order admitting it to probate, showing Mary L. Sholl to be the sole devisee under the will and that she was the owner of the interest of said deceased in and to the premises in question.

Appellee also introduced testimony to show that Henry S. Sholl, James M. Sholl and Samuel V. Sholl exercised acts of ownership in and to the mineral rights involved herein; that they made a lease of the property to one Wasson about the first of August, 1918. Wasson started to work the mine under the said lease; that shortly after making the lease the parties met at the mine and Sholl brothers made suggestions relative to its operation.

It further appears that Wasson, at the suggestions of Sholl brothers, surrendered his rights under his lease to one McDaniels, who operated the mine for a time, and it was during the time of his operation that the coal was removed occasioning the subsidence. Coal cars and timbers were furnished by Sholl brothers to Wasson while he operated the mine. The same equipment was turned over to McDaniels by Wasson.

In addition to the admission made by reason of the pleadings, we are of the opinion the evidence shows the Sholl brothers and Mary L. Sholl, after the death of Henry S. Sholl, were the owners of and interested in the operation of the mine as charged in the declaration.

The evidence shows that the roof or top of the mine was hard and the bottom was soft and mushy, which made it heave up; that there were eight or ten inches of soft clay underlying the vein of coal in question, and that the pressure on the side walls of the entries would turn the clay upside down; that the clay was forced up in the rooms as well as in the entries, which

would cause the roof to settle and when settling it is easily broken.

Horton, a civil engineer of ten years' experience and who surveyed the property of appellee and the coal mine of appellants, testified that the floor of the mine was blue mushy clay and that the bottom of the entry had squeezed up so as to make it difficult to walk in an upright position, and that in some places he had to crawl through on his hands and knees. Horton further said: "The pillars between the entries in the room and between the rooms are the only support of the cap rock and roof overlying the coal and when the surrounding coal is taken out, this soft mushy bottom exists in a wet condition, it squeezed up into the entries and rooms, the pillars are bound to go down into that wet mushy clay, and when they go down the stuff on top of them has got to come down. If it does, you find evidences of the roof dropping off and when that happens the earth on top of it naturally settles with it. You won't find it settling in the form of the rooms on the surface, but it will settle. The settlement occurs over where the coal has been taken out."

We are clearly of the opinion that the subsidence complained of was occasioned by the removal of the coal, and failure to leave sufficient support by way of pillars or otherwise. In other words, the mine was "robbed."

The gist of this action is the mining and removal of the coal without leaving sufficient support for the surface. The owner of minerals cannot legally remove them without leaving support sufficient to maintain the surface. In *Wilms v. Jess,* 94 Ill. 464, at page 467 the court said: "Where the surface of land belongs to one and the minerals to another, no evidence of title appearing to regulate or qualify their rights of enjoyment, the owner of the minerals cannot remove them without leaving support sufficient to maintain the surface in its natural state." At page 468 the court further said: "The rule is well settled, when

one owning the whole fee grants the minerals, reserving the surface to himself, his grantee is entitled only to so much of the minerals as he can get without injury to the superincumbent soil."

In the case of *Lloyd v. Catlin Coal Co.*, 210 Ill. 460, the court on page 468 also said: "Appellant owns the surface, and as a matter of law is entitled to support from the subjacent owner. This right of support is absolute and without condition, not dependent upon the order of a court of chancery by injunction or upon the degree of care that may be used by appellee in the prosecution of its work. If by the removal of any of the coal or mineral under the land, though under the most approved system of mining, complainant, as the owner of the superincumbent and superior estate, is deprived of the necessary support for his land, then that moment liability to respond in damages rests on appellee. *Wilms v. Jess*, 94 Ill. 464; *Noonan v. Pardee*, 200 Pa. St. 474, 86 Am. St. Rep. 722."

To the same effect is the case of *Jent v. Old Ben Coal Co.*, 222 Ill. App. 380. In *Wilms v. Jess, supra*, at pages 468 and 469, in discussing a rule applicable in this case, it was said: "But, it is contended, this obligation to protect the superincumbent soil only extends to the soil in its natural state, and that no obligation rests on the owner of the subjacent strata to support additional buildings, in the absence of express stipulation to that effect. This is doubtless true, but 'the mere presence of a building or other structure upon the surface does not prevent a recovery for injuries to the surface, unless it is shown that the subsidence would not have occurred except for the presence of the buildings. Where the injury would have resulted from the act if no buildings existed upon the surface, the act creating the subsidence is wrongful and renders the owners of the mines liable for all damages that result therefrom, as well to the buildings as to the land itself.' Wood on Nuisances, sec. 201;

*Brown v. Robins*, 4 Hurl. & N. 186; *Hamer v. Knowles*, 6 Hurl. & N. 459."

Appellants make no contention that the subsidence was occasioned by reason of the buildings on the premises in question. Furthermore, the record shows Sholl brothers have owned the mineral rights since 1893 and that the improvements were put on the property of appellee in 1911.

It is insisted by appellants that the judgment is excessive. The evidence discloses that the building in question was a frame house and before the subsidence was in good condition. It measured 26 x 42 feet, had a basement and a porch. The basement was divided into four rooms. In the first story there are five rooms and a reception hall. The second story has three rooms, hallway and attic. There were two large cisterns at the north of the house and walks had been constructed about the premises.

The witness Lauterbach, the carpenter who made the emergency repairs, testified: "At that time I found the house was settled and leaned towards the west. The foundation had settled in some places more than others and had been broken. The cement floor in the basement was very uneven and all seemed to lean towards the southwest corner. The west wall was broken in many places in some places it had left the sill six inches or so. It had gone down most at the southwest corner, but it had settled all the way to the north end. There were certain places where the wall had left the sill for about three feet and then it touched the sill again. The south wall was cracked also. The west and south wall had to be renewed. The west end of the porch had gone down with the house but the east end stayed up. The walk leading from the south towards the porch had pitched down and the points were broken. The east wall had one main crack between the ceiling and the basement. It was leaning towards the west two inches. The pillars of the porch on the northeast corner were strained

and twisted. The north wall was cracked and settled towards the northwest corner. The basement floor sloped to the southwest corner and was cracked in quite a number of places. The furnace has settled and pulled away from the pipes in places. The bottom of the chimney had settled but the chimney seemed to settle well with the house when it went down. The back stairway was twisted out of shape. In the kitchen the plaster was cracked and bulged and where the trim fits up square it was twisted out of place. The floor was out of level, the bathroom the same condition, the dining room the same, reception hall the same. The condition of the rooms upstairs was the same as downstairs.

The testimony shows that repairs have been made amounting to about $900. That it would cost $3,050 to put the house in condition it was in before the subsidence; that it would require 32,000 cubic feet of dirt to fill the subsidence around the house, which was an average of six inches over an acre and a half, and the cost for refilling would be one dollar per cubic yard.

After considering all the evidence we are not prepared to hold that the judgment is excessive. It is clearly within the range of the testimony. In determining the damages, the court limited appellee to the cost of repairs caused by the subsidence. Appellants contend the proper measure of damages for the injury to the building, improvements, lands and premises of appellee was the difference in the market value immediately prior to the injury and immediately after. It appears that appellee sought to introduce evidence as to the market value of the premises before and after the subsidence and appellants objected, stating that it was an improper way to prove damages. The objection was sustained. Appellants invited the ruling of the court. From what is disclosed in the record, appellants are in no position to now insist that the measure of damages was the depreciation in value.

The rule, however, adopted by the court is supported by authority. The case of *Donk Bros. Coal & Coke Co. v. Slata,* 133 Ill. App. 280, was a subsidence case. The declaration charged that the coal had been removed by the coal and coke company and thereby caused the ground to subside and the buildings to settle, crack and twist. A trial was had in the circuit court of Madison county and damages were assessed to the injured party. In the decision of the case the rule with reference to the measure of damages was considered at length. On page 282 the court said: "As a general rule, the measure of damages in actions for injuries to real property is the difference in market value before and after the injury to the premises. To this rule there are exceptions, and especially where the injuries are of the kind and character alleged in this case, it has been held that the cost of repair or of restoring the premises to their original condition is the true and better rule to apply."

*Donk Bros. Coal & Coke Co. v. Novero,* 135 Ill. App. 633, is also a subsidence case. The rule announced in *Donk Bros. Coal & Coke Co. v. Slata, supra,* was sustained, and the court further held, at page 636: "The valuation should be adopted which will be most beneficial to the injured party, for he is entitled to the benefit of the premises intact and to the value of any part separated."

The rule adopted by the court in measuring the damages in this cause finds support in the case of *Fitz-Simons & Connell Co. v. Braun & Fitts,* 199 Ill. 390, which was a suit to recover damages occasioned to a building by an explosion of dynamite. In discussing the question as to the measure of damages, at page 397, the court used the following language: "The instructions advised the jury to adopt as the measure of damages the cost of repairing the building so that it would be in as good condition as it was before it was damaged by the explosions. It is insisted the proper measure of damages was the depreciation in value of the

property resulting from the injuries. We think the costs of repairing the building and restoring it to its proper condition was the true measure of the damages. It was so held in *Hide v. Thornborough*, 61 Eng. C. L. 250, and in *Shrieve v. Stokes*, 8 B. Mon. [Ky.] 453, in which cases the injuries were occasioned by excavations made on adjoining lots to those on which the buildings injured were situate.''

In this decision last quoted from, the court approved the rule announced in volume 4, sec. 1018, of Sutherland on Damages, which is as follows: ''And that valuation should be adopted which will be most beneficial to the injured party, for he is entitled to the benefit of the premises intact and to the value of any part separated. The damages for injury done to a house are measured by the cost of restoring it to its previous condition.''

The rule in *FitzSimons & Connell Co. v. Braun & Fitts, supra,* was followed in the *City of Chicago v. Murdock,* 212 Ill. 9, where the plaintiffs' building was injured by the negligence of a contractor, for whose negligence the city was responsible. In this latter case the court instructed the jury that the proper measure of damages was the reasonable cost of repairs necessary to place the building in the condition it was in before the injury. It was held that this instruction correctly announced the law. In *Hartshorn v. Chaddock,* 135 N. Y. 116, 17 L. R. A. 426, a suit to recover for a wrongful obstruction by defendant of a watercourse by which plaintiff's land was flooded and personal property thereon destroyed, the court, in discussing the measure of damages which the plaintiff has sustained, said: ''There is no doubt that the diminution in the value of the land is the general rule for measuring the damages in an action for an injury to real property of a permanent character. But this rule is subject to some exceptions, as it would in some cases be incapable of application. If my neighbor

remove from my land, by means of a trespass, a load of sand or gravel, the act might have no appreciable effect upon the value of the property as a whole, and yet I would be entitled to damages, but in that case they would be measured by the value of the sand or gravel removed, and the expense of repairing any injury caused by its removal. If buildings are injured, fences or other fixtures removed, the cost of restoring the buildings and the value of the fixtures would generally constitute complete indemnity. In this case the defendant is chargeable with removing a portion of the soil from the plaintiff's land. Had the quantity removed been one yard instead of 1,600, no one, it is believed, would then contend that the plaintiff would be restricted to such damages as he could show by the diminution in value of the land. In this respect, the present is a border case. It is difficult to formulate a general rule that would apply to all cases of injury, such as this, to real property. Had the defendant broken a window in the plaintiff's house, there is no doubt that the cost of completely repairing it would be the proper measure of damages. There are many cases of injury to real estate where the cost of repairing the injury may be the proper measure of damages.''.

In *Anderson v. Miller,* 96 Tenn. 35, 31 L. R. A. 604, the court held that the measure of damages for partial destruction of a building was the reasonable cost of restoring it so that it would be as valuable as before.

In *Highway Com'rs Town of Burgess v. Hohmeyer,* 279 Ill. 66, it is held that in a condemnation case the true measure of damages is sometimes the cost and not the difference in value before and after. The court could follow but one of two rules bearing upon the measure of damages. The court having sustained the objection of appellants when appellee sought to prove the depreciation in value, appellee was limited to the cost of repairs.

Hurst v. Sholl, 232 Ill. App. 169.

Under the facts in this case, where it is charged that the building, fixtures, improvements and the ground on which the building was located were injured and damaged, appellee brought himself within the rule. We deem it proper to state that no instruction was offered or given to the jury defining the rules as to the measure of damages.

No error is assigned by appellants on the failure of the court to instruct the jury relative to the measure of damages. The jury on that question were required to base their verdict on the evidence offered by appellee, bearing upon the costs of making repairs.

On the whole we think the record is free of any reversible error. The costs of the additional abstract will be charged to appellants.

For the reasons herein given, we conclude that the judgment of the circuit court of Peoria county should be affirmed, which is accordingly done.

*Affirmed.*